Michael Licari (SBN 265241)
SPRINKLE LLOYD & LICARI LLP
2801 B Street, Unit 556
San Diego, CA 92102
mike@sl2law.com
(858) 717-0013

John Landay (SBN 257573)
LANDAY ROBERTS LLP
101 West Broadway Ste. 300
San Diego, CA 92101
(619) 230-5712

*Attorneys for Plaintiff Lit'l Pepper Gourmet, Inc.*

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

LIT'L PEPPER GOURMET, INC. individually and on behalf of those similarly situated

Plaintiffs,

v.

AIRGAS USA, LLC

Defendant.

Case No.: 3:19-CV-00837

The Hon. Larry Alan Burns
Courtroom 14A

**FIRST AMENDED COMPLAINT FOR**

1. **Unfair, Deceptive, and Misleading Advertising (Cal. Bus. & Prof. Code § 17500 et. seq.);**
2. **Unlawful, Unfair and Fraudulent Practices (Cal. Bus. & Prof. Code §17200 et. seq.); and**
3. **Breach of Contract.**
4. **Declaratory Relief.**

**JURY TRIAL DEMANDED**

Plaintiff Lit'l Pepper Gourmet, Inc., individually and on behalf of classes of all similarly situated California persons, by and through its attorneys, Sprinkle Lloyd & Licari LLP and Landay Roberts LLP, herein alleges as follows:

## PARTIES

1. Plaintiff Lit'l Pepper Gourmet, Inc. (hereinbelow, "Lit'l Pepper" or "Plaintiff") is a California corporation with its principal place of business in San Diego, California.

2. Defendant Airgas USA, LLC (hereinbelow, "Airgas USA" or "Defendant") is a Delaware limited liability company with its principal place of business in Radnor, Pennsylvania.

## JURISDICTION

3. In its notice of removal, Defendant represented that there are 100 or more purported class members with an amount in controversy of at least $5,386.059.

4. Minimal diversity is satisfied as Plaintiff is a citizen of California, and Defendant is a citizen of Pennsylvania and Delaware.

5. Thus, this Court has jurisdiction over the subject matter of this action pursuant to the 28 U.S.C. § 1332(d)(2).[1]

---

[1] Plaintiff makes no representation here that the requirements of 28 U.S.C. § 1332(d)(4) are not met as it is likely that they have not been met.

## VENUE

6. Defendant is subject to the personal jurisdiction of this District as the minimum contacts requirements are satisfied by the Defendant physically delivering carbon dioxide cylinders to Plaintiff in this District and at issue in this action are certain charges invoiced to and paid by Plaintiff for the delivery of these cylinders, among other products.

7. Thus, venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) as Defendant is deemed to reside in this District pursuant to 28 U.S.C. § 1391 (c)(2).

## FACTUAL BACKGROUND

8. Plaintiff is a restaurant in San Diego, California.

9. Airgas USA is a nation-wide, multi-billion-dollar manufacturer and distribution company headquartered in Radnor, Pennsylvania.

10. Airgas USA manufactures and distributes industrial gases, medical and specialty gases, welding supplies, and related safety products, including the manufacture and delivery of specialty gases to breweries, wineries, bottlers, and dispensers, including carbon dioxide to restaurants and other establishments that dispense carbonated beverages.

11. Airgas is the nation's leading single-source supplier of gases, welding equipment and supplies, and safety products, thereby giving it significant bargaining power over its customers.

12. Airgas USA has carbon dioxide manufacturing facilities located in northern, central and southern California.

13. Airgas USA markets, sells, and delivers products, including carbon dioxide, to Lit'l Pepper and to similarly situated customers throughout California in exchange for a per item cost.

14.    In addition to this per item cost, Airgas USA also charges its California customers a "Fuel Surcharge Flat" fee, a "Delivery Flat Fee," and an "Airgas Hazmat Charge."

15.    Airgas's terms and conditions provide that any surcharge can only be charged in the event of an extraordinary or emergency increase in the cost of fuel.

16.    Specifically, the terms and conditions found on each invoice received by Lit'l Pepper from March 2015 through the present that included such a fuel surcharge provided:

> Surcharges. Upon notice and receipt of underlying documentation, **Buyer shall pay to Seller a surcharge in the event of any extraordinary or emergency increases in the cost of** (a) power and/or raw materials used in the production of Products and/or (b) **fuel**.

[emphasis added] *See, e.g.*, Exhibit A, p. 4, Invoice numbered 9046354471 dated December 10, 2015.

17.    As of the date of this complaint, the same terms and conditions are posted on Airgas USA's corporate website at https://www.airgas.com/terms-of-sale.

18.    The naming of the fuel surcharge is not accidental. The term "Fuel Surcharge Flat" has a specific and generally understood meaning that, when used in conjunction with Airgas's other terms and conditions – including Airgas's imposition of a separate and itemized delivery fee – create the impression that (a) the fuel surcharge was directly related to increased fuel costs and (b) the fuel surcharge was to be used to defray such increased costs, among other things.

19.    Any reasonable consumer would understand these terms and conditions to mean, and Lit'l Pepper did so understand, that (a) Airgas could only levy fuel surcharges on the occurrence of extraordinary or emergency increases in fuel costs; (b) the fuel surcharge was directly related to increased fuel costs; and (c) the surcharge was to be used to defray such increased costs.

20. Lit'l Pepper was invoiced and paid a fuel surcharge on every delivery of carbon dioxide it received.

21. Specifically, Lit'l Pepper received and paid at least seven invoices with a fuel surcharge from March 2015 through the present and has paid $43.50 in fuel surcharges as follows:

| Invoice Date | Weekly Average Price of Diesel Fuel[2] | Fuel Surcharge | Delivery Fee |
|---|---|---|---|
| 4/28/2015 | $3.227 | $4.40 | $22.84 |
| 12/10/2015 | $2.65 | $3.95 | $22.84 |
| 9/16/2016 | $2.754 | $3.95 | $22.84 |
| 4/18/2017 | $2.946 | $4.90 | $22.84 |
| 12/2/2017 | $3.585 | $5.90 | $25.12 |
| 5/2/2018 | $3.863 | $10.30 | $27.75 |
| 10/1/2018 | $4.038 | $10.10 | $27.75 |

*See* Exhibit A, p. 2, Delivery Order numbered 8039853561 dated April 28, 2015; Exhibit A, p. 4, Invoice numbered 9046354471 dated December 10, 2015; Exhibit A, p. 8, Invoice numbered 9055515895 dated September 16, 2016; Exhibit A, p. 12, Invoice numbered 9062570594 dated April 18, 2018; Exhibit A, p. 14, Invoice numbered 9069483450 dated December 2, 2017; Exhibit A, p. 16, Invoice numbered 9075660591 dated May 2, 2018; and Exhibit A, p. 18, Invoice numbered 9080936706 dated October 1, 2018.

[2] Taken from https://www.eia.gov as of June 28, 2019.

22. In California between April 28, 2015 and October 1,2018, the fuel surcharge increased by approximately 130 percent, whereas the price of diesel fuel during this time frame increased by approximately 25 percent.

23. Airgas USA has charged fuel surcharges during this time frame absent the existence of the requisite extraordinary or emergency increases in fuel costs.

24. Airgas USA has charged fuel surcharges during this time frame that are not directly related to increased fuel costs and were thus not used to defray such increased costs.

25. Airgas USA has intentionally misrepresented that the fuel surcharge would only be imposed in the event of extraordinary or emergency increases in fuel costs.

26. Airgas USA has intentionally created the false impression that the fuel surcharge was directly related to increased fuel costs and that the surcharge was to be used to defray such increased costs.

27. Airgas USA instead used the fuel surcharge simply to generate extra profit at its customers' expense, while deceiving and/or misleading its customers into believing that the fuel surcharge was a reasonable and authorized charge directly related to actual increased fuel costs that was to be used to defray such increased fuel costs.

28. By inappropriately charging a relatively small fuel surcharge to hundreds, if not thousands, of its customers, Airgas USA reaps millions of dollars in additional revenue without the expectation of any challenge to the legitimacy of the fuel surcharge, all but insulating Airgas USA from liability that would otherwise be imposed under California law.

29. Although aware of the imposition of the fuel surcharge, Lit'l Pepper was not aware that there were no ongoing extraordinary or emergency increases in

fuel costs nor was it aware that the fuel surcharge was not directly related to increased fuel costs and that the fuel surcharge was not used to defray such increased costs.

30. Lit'l Pepper would not have paid the fuel surcharge had it known that (a) it had no legal obligation to do so or (b) had it known that Airgas USA had misrepresented the purpose and the nature of the fuel surcharge.

## CLASS REPRESENTATION

31. Plaintiff brings this action as a class action and proposes the following class:

> All persons who reside in California that paid Airgas USA a fuel surcharge at any time commencing four years before the original filing of this action in state court to the date of class certification.

32. Plaintiff excludes entities in bankruptcy, entities whose obligations have been discharged in bankruptcy, governmental entities, and judicial officers who preside over this case.

33. Plaintiff maintains the right to create additional subclasses or classes, if necessary, and to revise these definitions and class period to maintain a cohesive class that does not require an individual inquiry to determine liability.

## TYPICALITY AND NUMEROSITY

34. The exact number of class members is unknown to Plaintiff at this time, but in its removal motion, Defendant represented that there are 100 or more such entities and, thus, separate joinder of each member is impracticable.

35. The claims of the named Plaintiff are typical of the claims of the respective classes.

## COMMON QUESTIONS OF LAW AND/OR FACT

36. There are questions of law and fact common and of general interest to the class. These common questions of law and fact predominate over any questions affecting only individual members of the class. Such common questions include, but are not limited to, the following:

a. Whether there existed extraordinary or emergency increases in fuel costs warranting the imposition of the fuel surcharge;

b. Whether Defendant could impose the fuel surcharge absent such extraordinary or emergency increases in fuel costs;

c. Whether Defendant's statements in its invoices and on its website were false and/or misleading due to the imposition of a fuel surcharge despite the lack of any such extraordinary or emergency increases in fuel costs;

d. Whether Defendant's fuel surcharge was directly related to its increased fuel costs and whether the fuel surcharge was used to defray such costs;

e. Whether Defendant intentionally made false representations that created the false impression that the fuel surcharge was directly related to Defendant's increased fuel costs and that the fuel surcharge was to be used to defray such increased costs;

f. Whether Defendant intentionally failed to disclose material information that created the false impression that the fuel surcharge was directly related

to Defendant's increased fuel costs and that the fuel surcharge was to be used to defray such costs;

g. Whether Defendant's conduct constitutes an unfair business practice under California Business and Professions Code § 17200 *et seq.*;

h. Whether Defendant's statements constitute false and misleading statements under California Business and Professions Code § 17500 *et seq.*

i. Whether Defendant's violated its own terms and conditions found on the reverse side of its invoices; and

j. Whether Defendant's violations of its own terms and conditions constitutes a breach of contract.

**ADEQUATE REPRESENTATION**

37. Plaintiff will fairly and adequately protect the interests of the members of the class and have no interest antagonistic to those of other class members. Plaintiff has retained class counsel competent to prosecute class actions, and such class counsel is financially able to represent the classes.

**FIRST CAUSE OF ACTION**

**False and Misleading Statements**

(Cal. Bus. & Prof. § 17500, *et seq.*)

38. Plaintiff incorporates by reference all paragraphs hereinabove as if set forth fully herein.

39. The terms and conditions found in Defendant's invoices and on Defendant's website would cause a reasonable consumer to believe, and Plaintiff did believe that (a) Airgas could only levy fuel surcharges on the occurrence of such extraordinary or emergency increases in fuel costs; (b) the fuel surcharge was directly related to its increased fuel costs; and (c) the fuel surcharge was used to defray such costs.

40. Airgas USA made and disseminated false and/or misleading statements to Plaintiff and other members of the public regarding the nature and purpose of the fuel surcharge.

41. The terms and conditions found in Defendant's invoices and on Defendant's website are false and/or misleading as Airgas USA has charged fuel surcharges for over four years absent the existence of any ongoing extraordinary or emergency increases in fuel costs.

42. The terms and conditions found in Defendant's invoices and on Defendant's website are false and/or misleading as, based on information and belief, Airgas USA has continually charged fuel surcharges on every delivery to all of its customers for over four years that are not directly related to its increased fuel costs and were not used to defray such costs.

43. Although aware of the fuel surcharge, Plaintiff was not aware that the fuel surcharge was unauthorized and unreasonable.[3]

---

[3] Plaintiff notes here the its claim here has two separate bases. First, the imposition of an unauthorized fuel surcharge. Second, the misrepresentation of the purpose and nature of the fuel surcharge.

44. Defendant's fuel surcharge was unauthorized under Defendant's terms and conditions as there was no ongoing extraordinary or emergency increases in fuel costs.

45. Defendant's fuel surcharge was unreasonable under Defendant's terms and conditions as (a) the fuel surcharges were not directly related to Defendant's increased fuel costs; and (b) the fuel surcharges were not used to defray such costs.

46. Plaintiff would not have paid the fuel surcharge had it known that there was no obligation to do so, i.e., that the fuel surcharge was unauthorized and unreasonable under Defendant's terms and conditions.

47. Through the conduct described herein, and particularly through the charging and collecting of the unauthorized and unreasonable fuel surcharge from Plaintiff and other members of the public, Defendant has engaged in false and/or misleading advertising within the meaning of California Business and Professions Code § 17500 *et seq.*

48. Defendant's wrongful conduct was knowing and intentional, in violation of Business & Professions Code § 17500, *et seq.*, and ongoing and continues to this date.

49. As a result of Defendant's wrongful conduct, Defendant has been able to reap unjust revenue and profit.

50. Further, upon information and belief, unless restrained and enjoined, Airgas USA will continue to engage in the above-described conduct, and thus, injunctive relief is appropriate.

51. Plaintiff, on behalf of itself, all others similarly situated, and the public, seeks restitution of all money improperly obtained from Plaintiff and others similarly situated; an injunction prohibiting Airgas USA from continuing such practices; and

all other relief the Court deems proper and just, consistent with Business & Professions Code §17500 et seq.

**SECOND CAUSE OF ACTION**

**Unlawful, Unfair and Fraudulent Business Practices**

(Cal. Bus. & Prof. § 17200, *et seq.*)

52. Plaintiff incorporates by reference all paragraphs hereinabove as if set forth fully herein.

53. The terms and conditions found in Defendant's invoices and on Defendant's website would cause a reasonable consumer to believe, and Plaintiff did believe that (a) Airgas could only levy fuel surcharges on the occurrence of such extraordinary or emergency increases in fuel costs; (b) the fuel surcharge was directly related to its increased fuel costs; and (c) the fuel surcharge was used to defray such costs.

**Defendant's Conduct is Unfair**

54. Plaintiff's order of products from Defendant and Defendant's delivery of those products for a contract between Plaintiff and Defendant, the terms of which include the terms and conditions found on the reverse side of Defendant's invoices of those products.

55. Defendant's ongoing imposition of a fuel surcharge absent extraordinary or emergency increases in fuel costs breached those terms and conditions.

56. Defendant's ongoing imposition of a fuel surcharge absent any relationship at all between the fuel surcharge and the fuel costs incurred by

Defendant was in breach of a covenant of good faith and fair dealing owed by Defendant to Plaintiff and others similarly situated.

57.     Defendant's ongoing imposition of a fuel surcharge is unfair under California Business and Professions Code § 17200 *et seq.* as it constitutes a systematic breach of contract between Defendant and Plaintiff, as well as between Defendant others similarly situated.

**Defendant's Conduct is Fraudulent**

58.     Defendant misrepresented in each of its invoices and on its website that the fuel surcharge would be imposed only in the event of extraordinary or emergency increases in fuel costs.

59.     Defendant misrepresented the purpose and nature of the fuel surcharge by creating the false impression in each of its invoices and on its website that the fuel surcharge varies in accordance with Defendant's increased fuel costs and that the revenue from the fuel surcharge was used to offset those increased costs.

60.     Defendant knew these statements to be false when made.

61.     Defendant failed to disclose that the fuel surcharges were not designed to defray Defendant's increased fuel costs but rather were used to create increased profits for Defendant.

62.     Defendant failed to disclose that it recovers its fuel costs through other fees and charges apart from the fuel surcharge.

63.     Defendant made these misrepresentations and material omissions in order to induce Plaintiff and others similarly situated and did induce Plaintiff to believe that the fuel surcharge was authorized and reasonable and would only be charged in extraordinary or emergency circumstances so that Plaintiff and others similarly situated would agree to pay the fuel surcharge.

**Defendant's Conduct is Unlawful**

64.     Defendant's conduct is unlawful under California Business and Professions Code § 17200 *et seq.* as it constitutes false and/or misleading advertising within the meaning of California Business and Professions Code § 17500 *et seq.*

65.     Defendant's conduct is unlawful as it constitutes violations of the California Civil Code §§ 1572, 1573, 1709, 1711, 1770, 1670.5, among other provisions, and the common law.

66.     Through the conduct described herein, and particularly through the charging and collecting of the unauthorized and unreasonable fuel surcharge from Plaintiff and other members of the public, Defendant has engaged in unfair business practices within the meaning of California Business and Professions Code § 17200 *et seq.*

67.     Although aware of the fuel surcharge, Plaintiff was not aware that the fuel surcharge was unauthorized and unreasonable.[4]

68.     Defendant's fuel surcharge was unauthorized under Defendant's terms and conditions as there was no ongoing extraordinary or emergency increases in fuel costs.

69.     Defendant's fuel surcharge was unreasonable under Defendant's terms and conditions as (a) the fuel surcharges were not directly related to Defendant's increased fuel costs; and (b) the fuel surcharges were not used to defray such costs.

---

[4] Plaintiff notes here the its claim here has two separate bases. First, the continued imposition of an unauthorized fuel surcharge. Second, the misrepresentation of the purpose and nature of the fuel surcharge.

70. Plaintiff would not have paid the fuel surcharge had it known that there was no obligation to do so, i.e., that the fuel surcharge was unauthorized and unreasonable under Defendant's terms and conditions.

71. Defendant's wrongful conduct was knowing and intentional, in violation of Business & Professions Code § 17200, *et seq.*, and ongoing and continues to this date. [5]

72. As a result of its unfair business practices, Defendant has been able to reap unjust revenue and profit. Further, upon information and belief, unless restrained and enjoined, Airgas USA will continue to engage in the above-described conduct, and, thus, injunctive relief is appropriate.

73. Plaintiff, on behalf of itself, all others similarly situated, and the public, seeks restitution of all money improperly obtained from Plaintiff and others similarly situated; an injunction prohibiting Airgas USA from continuing such practices; and all other relief the Court deems proper and just, consistent with Business & Professions Code §17200 et seq.

**THIRD CAUSE OF ACTION**

**Breach of Contract**

74. Plaintiff incorporates by reference all paragraphs hereinabove as if set forth fully herein.

75. Plaintiff's order of products from Defendant and Defendant's delivery of those products for a contract between Plaintiff and Defendant, the terms of which

[5] Even if the misrepresentations were negligently made rather than intentional, such negligent misrepresentations sill constitute on unfair business practice under California Business and Professions Code, § 17200, *et seq*.

include the terms and conditions found on the reverse side of Defendant's invoices of those products.

76. Those terms and conditions provide that Airgas could only levy fuel surcharges on the occurrence of extraordinary or emergency increases in fuel costs.

77. Those terms and conditions found in Defendant's invoices a would cause a reasonable consumer to believe, and Plaintiff did believe that (a) the fuel surcharge was directly related to its increased fuel costs; and (b) the fuel surcharge was used to defray such costs.

78. Defendant's ongoing imposition of a fuel surcharge absent extraordinary or emergency increases in fuel costs breached those terms and conditions.

79. Defendant's ongoing imposition of a fuel surcharge absent any relationship at all between the fuel surcharge and the fuel costs incurred by Defendant was in breach of a covenant of good faith and fair dealing owed by Defendant to Plaintiff and others similarly situated.

80. Although aware of the fuel surcharge, Plaintiff was not aware that the fuel surcharge was unauthorized and unreasonable.

81. Defendant's fuel surcharge was unauthorized under Defendant's terms and conditions as there was no ongoing extraordinary or emergency increases in fuel costs.

82. Defendant's fuel surcharge was unreasonable under Defendant's terms and conditions as (a) the fuel surcharges were not directly related to Defendant's increased fuel costs; and (b) the fuel surcharges were not used to defray such costs.

83. Plaintiff would not have paid the fuel surcharge had it known that there was no obligation to do so, i.e., that the fuel surcharge was unauthorized and unreasonable under Defendant's terms and conditions.

84. As a result of its unfair business practices, Defendant has been able to reap unjust revenue and profit.

85. Plaintiff, on behalf of itself, all others similarly situated, seeks damages for breach of contract, including all money improperly obtained from Plaintiff and others similarly situated from Defendant's breach of its own terms and conditions.

**FOURTH CAUSE OF ACTION**

**Declaratory Relief**

86. Plaintiff incorporates by reference all paragraphs hereinabove as if set forth fully herein.

87. The terms and conditions stated on Defendant's website, but not on its invoices, include a purported prohibition against class action lawsuits. Specifically, the terms and conditions on Defendant's website provide that

> Any claim must be brought in the respective party's individual capacity, and not as a plaintiff or class member in any purported class, collective, representative, multiple plaintiff, or similar proceeding ("Class Action"). The parties expressly waive any ability to maintain any Class Action in any forum.

88. By inappropriately charging a relatively small fuel surcharge to hundreds, if not thousands, of its customers, Defendant reaps millions of dollars in additional revenue without the expectation of any challenge to legitimacy of the fuel surcharge because of the small monetary amounts thereof all but insulating Airgas USA from liability that would otherwise be imposed under California law.

89. The class action waiver is in violation of California Civil Code § 1668 and unconscionable under California law.

90. Plaintiff, therefore, seeks declaratory relieve that the class action waiver is unenforceable.

## PRAYER FOR RELIEF

Plaintiff asks for judgment against Airgas USA in favor of itself and the putative class members as follows:

1. For declaratory relief that the class action waiver found on Defendant's website is unenforceable and/or unconscionable;
2. For an order certifying this action as a class action;
3. For full restitution of the fuel surcharges paid by the class;
4. For injunctive relief enjoining Airgas from continuing to charge the fuel surcharge to its California customers in violation of California law*;*
5. For attorneys' fees; and
6. For all other relief which is deemed equitable and just.

///

///

///

///

///

///

///

///

///

///

**DEMAND FOR JURY TRIAL**

Plaintiffs and members of the Class hereby request a trial by jury of all issues triable by jury.

DATED: June 28, 2019

By: */s/ Michael Licari*

Michael Licari
SPRINKLE LLOYD & LICARI LLP
2801 B. Street Suite 556
San Diego, CA 92102
(858) 717-0013

DATED: June 28, 2019

By: */s/ John K. Landay*

John Landay
LANDAY ROBERTS LLP
101 West Broadway Ste. 300
San Diego, CA 92101
(619) 230-5712

Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that true and correct copies of the above and following documents have been served on July 2, 2019 to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Civ. LR 5.4(d). Any other counsel of record will be served by U.S. Mail or hand delivery.

**PLAINTIFF LIT'L PEPPER GOURMET, INC. FIRST AMENDED COMPLAINT**

*/s/ John K. Landay, Esq.*
John K. Landay

# Exhibit A

Airgas

# DELIVERY ORDER

FOR LOCATION NEAREST YOU VISIT WWW.AIRGAS.COM

**SHIPPER:**
AIRGAS USA, LLC
9010 CLAIREMONT MESA BLVD
SAN DIEGO, CA 92123-1208

**SOLD BY:**
AIRGAS USA, LLC
9010 CLAIREMONT MESA BLVD
SAN DIEGO, CA 92123-1208
858-279-8200

**DELIVERY ORDER #** 8039853561
**PAGE** 1 OF 1
**ORDER DATE:** 04/28/2015
**SCH SHIP DATE:** 04/29/2015
**PRINTED:** 20:17 04/28/2015
**SALES ORDER:** 1036068611
**SHIPMENT:** 2138735

**SHIP TO:** 1658108
LIT'L PEPPER GOURMET
8911 COMPLEX DR STE C
SAN DIEGO, CA 92123-1412 US
858-565-6552

**SOLD TO:** 1658108
LIT'L PEPPER GOURMET
8911 COMPLEX DR STE C
SAN DIEGO, CA 92123-1412 US

**CUST PO #** HANNY 042815
**RELEASE #**
**ORD BY** HANNY 858-565-6552
**ENT BY** MARKSTRICK

| Order Type | Payment Terms | Incoterm | Route | Sales Office | Plant | Sales Org | Total Containers Ship | Total Containers Return |
|---|---|---|---|---|---|---|---|---|
| Standard Order | NET 30 | Airgas Truck | Airgas Truck | W051 | W105 | WE00 | 2 | 2 |

SHIPPING INST: THIS ORDER WAS ENTERED BY MARK STRICKLAND CSOD-SAN DIEGO ON TUESDAY APRIL 28TH, 2015

OFFICE: (858) 495-2390 EMAIL:MARK.STRICKLAND@AIRGAS.COM

ORDERED BY: HANNY 858-565-6552

| Qty Shipped | UOM Type | HM | Description & Hazard Class | Qty Order | Containers Ship | Containers Ret | Vol /Wt | Unit Price | |
|---|---|---|---|---|---|---|---|---|---|
| 2 | CL | X | UN1013 CARBON DIOXIDE 2.2 | | | | | | |
| | | | **Line# 10 Material# CD FG50 Stor. Loc. F001** | 2 | 2 | 0 | 100 | 65.60 | |
| | | | CARBON DIOXIDE FOOD GRADE 50LBS CGA 320 | | | | LB | /CL | (H) |
| | | X | UN1013 CARBON DIOXIDE 2.2 | | | | | | |
| 0 | | | **Line# 20 Material# CY-CD FG50** | 0 | 0 | 2 | | | |
| | | | Delivery Flat Fee | | | | | | 22.84 |
| | | | Fuel Surcharge Flat | | | | | | 4.40 |
| | | | Airgas Hazmat Charge (H) - see Itemized Charges on reverse or visit | | | | | | 14.50 |
| | | | www.Airgas.com/terms-of-sale | | | | | | |

**EMERGENCY CONTACT:1-866-734-3438**

PURCHASER AGREES TO OBTAIN MATERIAL SAFETY DATA SHEETS (MSDS) FROM ONE OF THE FOLLOWING SOURCES; POINT OF PURCHASE, AIRGAS WEB SITE AT WWW.AIRGAS.COM OR BY CALLING THE ABOVE LISTED EMERGENCY CONTACT PHONE NUMBER AND SELECTING OPTION #3

THIS IS TO CERTIFY THAT THE ABOVE NAMED MATERIALS ARE PROPERLY CLASSIFIED, DESCRIBED, PACKAGED, MARKED AND LABELED AND ARE IN PROPER CONDITION FOR TRANSPORTATION ACCORDING TO THE APPLICABLE REGULATIONS OF THE DEPARTMENT OF TRANSPORTATION

PLACARDS OFFERED
ACCEPT REJECT
CUSTOMER MUST INITIAL CHOICE

THIS AGREEMENT IS SUBJECT TO AIRGAS' STANDARD TERMS AND CONDITIONS
SEE REVERSE SIDE FOR IMPORTANT SAFETY INFORMATION.

ACCEPTED FOR THE ABOVE CUSTOMER X ______

NAME PLEASE PRINT ______

4/29/15

AIRGAS PERSONNEL DATE T.O.D.

INTERNAL USE ONLY

| Filled By | Staging Area | Total PKGS | Tracking / Pro Number | Freight Charges |
|---|---|---|---|---|
| | | | | |

**Delivery #** 8039853561



## TERMS AND CONDITIONS

**WARNING: TRANSPORT AND USE OF COMPRESSED GASES MAY BE EXTREMELY DANGEROUS. DO NOT TRANSPORT WITHOUT PROTECTIVE CAPS, IN CONFINED SPACES OR IN ANY OTHER IMPROPER MANNER. ALWAYS TRANSPORT CYLINDERS IN A SECURED UPRIGHT POSITION. BUYER ACKNOWLEDGES THAT IT HAS RECEIVED A SAFETY INSTRUCTION SHEET FROM SELLER, SAFE HANDLING OF COMPRESSED GASES.**

1. ANY AND ALL PRODUCTS AND SUPPLIES DELIVERED TO BUYER BY SELLER OR SELLER'S REPRESENTATIVE ARE COVERED BY THIS DELIVERY TICKET. THE CYLINDERS, FITTINGS AND CAPS COVERED BY THIS DOCUMENT ARE RENTED OR LEASED BY SELLER TO BUYER, NOT SOLD. BUYER SHALL NOT PERMIT CYLINDERS OR OTHER STORAGE CONTAINERS FURNISHED HEREUNDER TO BE FILLED WITH ANY PRODUCT NOT FURNISHED BY SELLER OR SELLER'S AUTHORIZED REPRESENTATIVE. ALL CYLINDERS (OTHER THAN THOSE SUBJECT TO AN ANNUAL LEASE) ARE RENTED AT CURRENT DAILY RATES, BEGINNING WITH THE DATE OF DELIVERY. RENTAL CHARGES ARE ASSESSED AS OF THE LAST DAY OF EACH MONTH OR AT THE START OF EACH ANNUAL LEASE PERIOD, AS APPLICABLE. BUYER SHALL RETURN, IN GOOD CONDITION, ALL CYLINDERS, COMPLETE WITH CAPS AND FITTINGS AND SHALL PAY SELLER UPON DEMAND THE REPLACEMENT VALUE OF (I) ANY LOST OR DAMAGED CYLINDERS, CAPS OR FITTINGS OR (II) THOSE CYLINDERS NOT RETURNED TO SELLER WITHIN THREE (3) MONTHS FROM DATE OF SHIPMENT TO THE BUYER (OTHER THAN THOSE SUBJECT TO AN ANNUAL LEASE) OR, IF DAMAGED AND THE DAMAGE CAN BE REPAIRED, THE COST OF MAKING SUCH REPAIR. PAYMENT BY THE BUYER OF CHARGES FOR DAMAGED, LOST OR DESTROYED CYLINDERS SHALL NOT GIVE ANY OWNERSHIP INTEREST IN THE CYLINDERS TO THE BUYER. UPON SUBSEQUENT RETURN OF ANY PURPORTEDLY LOST OR DESTROYED CYLINDERS SO PAID FOR, SELLER WILL REFUND THE AMOUNT PREVIOUSLY PAID WITH RESPECT TO ITS LOSS OR DESTRUCTION TO THE BUYER, LESS THE COST, IF ANY, OF PUTTING SUCH CYLINDERS IN REPAIR AND LESS CYLINDER RENTAL ACCRUED TO THE DATE OF RETURN.

2. ANY TAXES IMPOSED BY FEDERAL, STATE, OR OTHER GOVERNMENTAL AUTHORITY ON THE SALE, USE OR POSSESSION OF GOODS SHALL BE PAID BY BUYER IN ADDITION TO THE PURCHASE PRICE.

3. UNLESS OTHERWISE SPECIFIED IN A CONTRACT, BUYER SHALL MAKE PAYMENT IN FULL WITHIN 30 DAYS AFTER THE DATE OF SELLER'S INVOICE. A LATE PAYMENT CHARGE OF 1.5% ON THE UNPAID, PAST DUE BALANCE, WILL BE ASSESSED MONTHLY (MINIMUM TWO DOLLARS ($2.00), OR THE MAXIMUM LAWFUL RATE ALLOWABLE IN THE STATE WHERE THE GOODS ARE DELIVERED, WHICHEVER IS LESS. BUYER SHALL BE IN DEFAULT HEREUNDER UPON BUYER'S FAILURE TO MAKE PAYMENT AS REQUIRED HEREIN OR UPON BUYER'S FAILURE TO COMPLY WITH ANY OF THE TERMS AND CONDITIONS CONTAINED HEREIN OR UPON THE INSTITUTION OF ANY VOLUNTARY OR INVOLUNTARY BANKRUPTCY, INSOLVENCY, RECEIVERSHIP OR DEBTOR RELIEF PROCESSING BY OR AGAINST BUYER OR UPON BUYER'S MAKING OF AN ASSIGNMENT FOR THE BENEFIT OF CREDITORS. IF SELLER EMPLOYS ANY COLLECTION AGENCY OR ATTORNEY TO COLLECT ANY AMOUNT DUE SELLER, AND/OR TO REPOSSESS ANY GOODS, BUYER SHALL PAY ALL COLLECTION FEES, ATTORNEYS' FEES, AND COURT COSTS, IN ADDITION TO THE AMOUNT OTHERWISE UNPAID. SELLER MAY BRING SUIT FOR THE COLLECTION OF ANY SUCH AMOUNT IN ANY JURISDICTION OR VENUE SELLER MAY SELECT.

4. NO GOODS SHALL BE RETURNED TO SELLER WITHOUT SELLER'S WRITTEN AUTHORIZATION. BUYER SHALL PAY A FIFTEEN PERCENT (15%) RESTOCKING CHARGE ON ALL GOODS RETURNED TO SELLER, EXCEPT FOR RETURNS PROVIDED FOR UNDER SECTION 5 HEREOF.

***5. SELLER SHALL BE LIABLE ONLY FOR THE REPAIR OR REPLACEMENT OF DEFECTIVE GAS CYLINDERS AND PRODUCTS, INCLUDING THE REPLACEMENT OF GASES THAT DO NOT MEET ITS PURITY SPECIFICATIONS WITH GASES THAT DO MEET SUCH SPECIFICATIONS. BUYER KNOWINGLY AND FULLY ASSUMES THE RISKS OF TRANSPORTING AND USING COMPRESSED GASES. BUYER SHALL WARN AND PROTECT ITS EMPLOYEES AND OTHERS EXPOSED TO THE HAZARDS POSED BY BUYER'S STORAGE AND USE OF THE PRODUCT. SELLER SHALL NOT BE LIABLE FOR ANY DIRECT (EXCEPT AS EXPRESSLY PROVIDED HEREIN), INDIRECT, SPECIAL, INCIDENTAL, CONSEQUENTIAL AND/OR PUNITIVE DAMAGES, ARISING OR ALLEGED TO ARISE OUT OF OR IN CONNECTION WITH ITS OBLIGATIONS HEREUNDER OR WITH ANY PRODUCT, OTHER ITEMS OF SALE, OR EQUIPMENT SOLD OR LEASED HEREUNDER, WHETHER SUCH DAMAGE RESULTS FROM ANY NEGLIGENT ACT OR OMISSION OR IS RELATED TO STRICT LIABILITY, OR OTHERWISE.***

6. ALL PRODUCTS, OTHER ITEMS OF SALE, CYLINDERS AND OTHER CONTAINERS FURNISHED HEREUNDER SHALL CONFORM TO THE DESCRIPTION THEREOF PUBLISHED BY THE MANUFACTURER AT THE TIME OF SALE AND WILL MEET SELLER'S PURITY SPECIFICATIONS FOR ALL GAS PRODUCTS. ***SELLER SPECIFICALLY DISCLAIMS ANY OTHER EXPRESS OR IMPLIED STANDARDS, GUARANTEES, OR WARRANTIES, INCLUDING ANY WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE OR NON-INFRINGEMENT AND ANY WARRANTIES THAT MAY BE ALLEGED TO ARISE AS A RESULT OF CUSTOM OR USAGE.*** ALL CLAIMS BY BUYER HAVING ANYTHING TO DO WITH ANY PRODUCT OR EQUIPMENT FURNISHED HEREUNDER BY SELLER SHALL BE MADE IN WRITING WITHIN TEN (10) DAYS AFTER THE DELIVERY THEREOF AND FAILURE OF BUYER TO GIVE SUCH NOTICE SHALL CONSTITUTE A COMPLETE WAIVER BY BUYER OF ANY SUCH CLAIMS AND DEFENSE FOR SELLER AGAINST ANY SUCH CLAIMS.

7. THE TOTAL AMOUNT DUE FROM BUYER MAY INCLUDE VARIOUS ITEMIZED CHARGES, INCLUDING: CHARGES FOR THE HANDLING OF HAZARDOUS MATERIAL AND FOR COMPLIANCE WITH LAWS AND REGULATIONS CONCERNING HAZARDOUS MATERIALS; CHARGES FOR HANDLING, DELIVERY, AND SHIPPING; AND/OR CHARGES FOR ENERGY OR FUEL. NONE OF THE CHARGES REPRESENT A TAX OR FEE PAID TO OR IMPOSED BY ANY GOVERNMENTAL AUTHORITY, AND ALL OF THE CHARGES ARE RETAINED BY THE SELLER. SELLER HAS NOT SPECIFICALLY QUANTIFIED THE RELATIONSHIP BETWEEN THE CHARGES AND THE ACTUAL COSTS ASSOCIATED WITH THE CHARGES, WHICH CAN VARY BY PRODUCT, SERVICE, TIME AND PLACE, AMONG OTHER THINGS.

8. CERTAIN AIRGAS COMPANIES ARE U.S. GOVERNMENT CONTRACTORS AND SUBCONTRACTORS AND ARE SUBJECT TO AND ADHERE TO THE REQUIREMENTS OF FEDERAL LAWS, EXECUTIVE ORDERS, AND ATTENDANT RULES AND REGULATIONS, SPECIFICALLY EXECUTIVE ORDER NO 11246, THE REHABILITATION ACT OF 1973, AND THE VIETNAM ERA VETERANS READJUSTMENT ASSISTANCE ACT OF 1974, ALL AS AMENDED.

9. IF ANY TERM OR CONDITION OF THIS DELIVERY TICKET IS HELD INVALID, THEN SUCH INVALIDITY SHALL NOT AFFECT ANY OTHER TERM AND CONDITION OF THIS DELIVERY TICKET, WHICH SHALL REMAIN IN FULL FORCE AND EFFECT.

## EMERGENCY RESPONSE INFORMATION

### PROPANE / HYDROGEN

**POTENTIAL HAZARDS**

**FIRE OR EXPLOSION**

- EXTREMELY FLAMMABLE.
- [illegible]

**HEALTH**

- [illegible]

**PUBLIC SAFETY**

- **CALL Emergency Response Telephone Number on Shipping Paper first.**
- [illegible]

**PROTECTIVE CLOTHING**

- [illegible]

**EVACUATION**

**Large Spill**

- [illegible]

**Fire**

- [illegible]

**EMERGENCY RESPONSE**

**FIRE**

- **DO NOT EXTINGUISH A LEAKING GAS FIRE UNLESS LEAK CAN BE STOPPED.**

**Small Fires**

- [illegible]

**Large Fires**

- [illegible]

**Fire involving Tanks**

- [illegible]

**SPILL OR LEAK**

- [illegible]

**CAUTION: When in contact with refrigerant/cryogenic liquids, many materials become brittle and are likely to break without warning.**

**FIRST AID**

- [illegible]

### ACETYLENE / MAPP

**POTENTIAL HAZARDS**

**FIRE OR EXPLOSION**

- EXTREMELY FLAMMABLE.
- [illegible]

**HEALTH**

- [illegible]

**PUBLIC SAFETY**

- **CALL Emergency Response Telephone Number on Shipping Paper first.**
- [illegible]

**PROTECTIVE CLOTHING**

- [illegible]

**EVACUATION**

**Large Spill**

- [illegible]

**Fire**

- [illegible]

**EMERGENCY RESPONSE**

**FIRE**

- **DO NOT EXTINGUISH A LEAKING GAS FIRE UNLESS LEAK CAN BE STOPPED.**

**Small Fires**

- [illegible]

**Large Fires**

- [illegible]

**Fire involving Tanks**

- [illegible]

**SPILL OR LEAK**

- [illegible]

**FIRST AID**

- [illegible]

### AIR / OXYGEN / NITROUS OXIDE / LIQUID $O_2$

**POTENTIAL HAZARDS**

**FIRE OR EXPLOSION**

- [illegible]

**HEALTH**

- [illegible]

**PUBLIC SAFETY**

- **CALL Emergency Response Telephone Number on Shipping Paper first.**
- [illegible]

**PROTECTIVE CLOTHING**

- [illegible]

**EVACUATION**

**Large Spill**

- [illegible]

**Fire**

- [illegible]

**EMERGENCY RESPONSE**

**FIRE**

**Small Fires**

- [illegible]

**Large Fires**

- [illegible]

**Fire involving Tanks**

- [illegible]

**SPILL OR LEAK**

- [illegible]

**CAUTION: When in contact with refrigerant/cryogenic liquids, many materials become brittle and are likely to break without warning.**

**FIRST AID**

- [illegible]

### $CO_2$ / LIQUID $CO_2$ / LIQUID ARGON / LIQUID $N_2$

**POTENTIAL HAZARDS**

**HEALTH**

- [illegible]

**FIRE OR EXPLOSION**

- [illegible]

**PUBLIC SAFETY**

- **CALL Emergency Response Telephone Number on Shipping Paper first.**
- [illegible]

**PROTECTIVE CLOTHING**

- [illegible]

**EVACUATION**

**Large Spill**

- [illegible]

**Fire**

- [illegible]

**EMERGENCY RESPONSE**

**FIRE**

- [illegible]

**Fire involving Tanks**

- [illegible]

**SPILL OR LEAK**

- [illegible]

**CAUTION: When in contact with refrigerant/cryogenic liquids, many materials become brittle and are likely to break without warning.**

**FIRST AID**

- [illegible]

### ARGON / NITROGEN / HELIUM

**POTENTIAL HAZARDS**

**HEALTH**

- [illegible]

**FIRE OR EXPLOSION**

- [illegible]

**PUBLIC SAFETY**

- **CALL Emergency Response Telephone Number on Shipping Paper first.**
- [illegible]

**PROTECTIVE CLOTHING**

- [illegible]

**EVACUATION**

**Large Spill**

- [illegible]

**Fire**

- [illegible]

**EMERGENCY RESPONSE**

**FIRE**

- [illegible]

**Fire involving Tanks**

- [illegible]

**SPILL OR LEAK**

- [illegible]

**FIRST AID**

- [illegible]

TO ENSURE PROPER CREDIT, PLEASE RETURN THE UPPER PORTION WITH YOUR REMITTANCE. FOR QUESTIONS ON YOUR ACCOUNT PLEASE CALL: 800-224-7427

| ORDER NO. | INVOICE NO. | INVOICE DATE | SOLD TO NO. | SOLD TO NAME |
|---|---|---|---|---|
| 1042825154 | 9046354471 | 12/10/2015 | 1658108 | LIT'L PEPPER GOURMET |

| PO / RELEASE | ORDERED BY | SHIP VIA | PAYMENT TERMS | ORDER DATE |
|---|---|---|---|---|
| | | ARGTRK | NET 30 | 12/09/2015 |

| DELIVERY NO. / DESCRIPTION | MATERIAL NUMBER | QTY SHIP'D | UOM | QTY B/O | CYLINDER SHP'D | CYLINDER RET'D | UNIT PRICE | UOM | AMOUNT |
|---|---|---|---|---|---|---|---|---|---|
| 8047196957 | CD FG50 | 2 | CL | | 2 | 2 | 67.90 | CL | 135.80 N |
| CARBON DIOXIDE FG/IND 50LB (Vol: 100 LBS) | | | | | | | | | (H) |
| | | | | | | | Sale subtotal: | | 135.80 |
| Delivery Flat Fee | | | | | | | | | 22.84 |
| Fuel Surcharge Flat | | | | | | | | | 3.95 |
| Airgas Hazmat Charge | | | | | | | | | 14.90 |

Airgas Hazmat Charge (H) - see Itemized Charges on reverse or visit www.Airgas.com/terms-of-sale

| AMOUNT | 177.49 |
|---|---|

Airgas. www.airgas.com

AIRGAS USA, LLC
PO Box 93500
Long Beach, CA 90809-3500

SHIP TO: 1658108
LIT'L PEPPER GOURMET
8911 COMPLEX DR STE C
SAN DIEGO CA 92123-1412

FOR WIRE TRANSFER PAYMENTS
Airgas USA, LLC
Acct No 8606074158
PNC Bank, ABA No 031000053

For change of address
email to: wdiv_adrss@airgas.com
or call 562-627-3139

REV 1.1.13 0021122

Page 1 of 1

Terms of Sale. Each sale of Goods or services by an Airgas™ company is and shall be governed by the terms and conditions on this Disclosure, the Terms of Sale attached to the Account Application (if one has been completed), and the Terms of Sale found at http://www.airgas.com/customer_service/terms.aspx (collectively the "Terms of Sale"). Each Contract for the sale of Goods or services between Seller and Buyer ("Contract") shall include these Terms of Sale, together with any other material describing the Goods or services being sold, their price, delivery terms, and all other special provisions. "Goods" refers to any items of tangible personal property described in any Contract or otherwise provided by Seller to Buyer.

Notice Regarding Cylinder Rentals/Leases and Responsibility. This document shows the total number of cylinders charged to Buyer (i.e., cylinders which Seller has rented or leased to Buyer, and which Buyer has not returned) according to Seller's records as of the month ending date shown. The number of cylinders thus charged to Buyer shall be considered correct for all contractual purposes between Buyer and Seller, unless Buyer reports to Seller in writing any errors Buyer claims within 60 days after the date hereof. Buyer agrees to continue to pay rent on all cylinders charged to Buyer until Buyer has either (i) returned such cylinders to Seller in good working order or (ii) pays Seller the replacement cost thereof.

Refrigerant Cylinder Returns/Deposit. Refillable refrigerant cylinders shall remain the property of Airgas or its third-party vendors. Such cylinders shall not be used by Customer for purposes other than the storage of gas products purchased from Airgas or the return and reclamation of certain gases (e.g., refrigerants). Each refillable cylinder will be subject to a cylinder deposit fee as established by Airgas from time to time. Airgas will refund the deposit fee when the Customer returns the refrigerant cylinder unless the cylinder's condition is deemed to be unfit for reuse, as determined by Airgas. Such determination shall be irrefutable sixty days after the cylinder was returned.

Warranty. All products, other items of sale, cylinders and other containers furnished by an Airgas company, shall conform to the description thereof published by the manufacturer at the time of sale and will meet Seller's purity specifications for all gas products. SELLER SPECIFICALLY DISCLAIMS ANY OTHER EXPRESS OR IMPLIED STANDARDS, GUARANTEES, OR WARRANTIES, INCLUDING ANY WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE OR NON-INFRINGEMENT AND ANY WARRANTIES THAT MAY BE ALLEGED TO ARISE AS A RESULT OF CUSTOM OR USAGE.

Limitation of Liability. SELLER SHALL BE LIABLE ONLY FOR THE REPAIR OR REPLACEMENT OF DEFECTIVE GAS CYLINDERS AND PRODUCTS, INCLUDING THE REPLACEMENT OF GASES THAT DO NOT MEET ITS PURITY SPECIFICATIONS WITH GASES THAT DO MEET SUCH SPECIFICATIONS. BUYER KNOWINGLY AND FULLY ASSUMES THE RISKS OF TRANSPORTING AND USING COMPRESSED GASES. SELLER SHALL NOT BE LIABLE FOR ANY DIRECT (EXCEPT AS EXPRESSLY PROVIDED HEREIN), INDIRECT, SPECIAL, INCIDENTAL, CONSEQUENTIAL AND/OR PUNITIVE DAMAGES, ARISING OR ALLEGED TO ARISE OUT OF OR IN CONNECTION WITH ITS PERFORMANCE OF ANY OBLIGATIONS ORANY PRODUCT, OTHER ITEMS OF SALE, OR EQUIPMENT SOLD OR LEASED BY SELLER, WHETHER SUCH DAMAGE RESULTS FROM ANY NEGLIGENT ACT OR OMISSION OR IS RELATED TO STRICT LIABILITY OR OTHERWISE.

Terms of Payment. Unless otherwise specified in a Contract, Buyer shall make payment in full within 30 days after the date of Seller's invoice. Continued credit is subject to Seller's assessment of Buyer's financial condition and ability to pay. A late payment charge of 1.5% on the unpaid, past due balance, will be assessed monthly (minimum two dollars ($2.00)) or the maximum credit rate allowable in the state where the Goods are delivered, whichever is [illegible].

Surcharges. Upon notice and receipt of underlying documentation, Buyer shall pay to Seller a surcharge in the event of any extraordinary or emergency increases in the cost of [illegible] power and/or raw materials used in the production of Products, and/or [illegible] fuel.

Title to Equipment. Title to all rental equipment shall remain in Seller's name. Buyer shall not cover, modify, remove or otherwise disturb any identification or other indicia of Seller's ownership on any rental equipment.

Taxes. Any taxes imposed by federal, state, or other governmental authority on the sale, use or possession of Goods, or the sale or performance of services by an Airgas company, shall be paid by Buyer in addition to the purchase price.

[illegible] Charges. (a) The total amount due from the Buyer may include several itemized charges, including charges for the handling of hazardous materials and for compliance with laws and regulations concerning hazardous materials, charges for handling, delivery and shipping, and/or charges for energy or fuel. None of the charges represent a tax or fee paid to or imposed by any government authority, and all of the charges are retained by the Seller. The Seller has not specifically quantified the relationship between the charges and the actual costs associated with the charges, which can vary by product, service, time and place, among other things. (b) No such charges not already provided for in a Rider will be imposed without mutual consent.

Government Contracts. Certain Airgas companies are U.S. government contractors and subcontractors and are subject to and adhere to the requirements of federal laws, executive orders, and attendant rules and regulations, specifically Executive Order No. 11246, the Rehabilitation Act of 1973 and the Vietnam Era Veterans Readjustment Assistance Act of 1974, all as amended.

Airgas eBusiness

Now doing business with Airgas is easier than ever with our eBusiness website: http:// www.airgas.com. Visit us online today to see how www.airgas.com can save you time and money.

**Airgas.**
an Air Liquide company

# DELIVERY ORDER

FOR LOCATION NEAREST YOU VISIT **WWW.AIRGAS.COM**

**SHIPPER:**
AIRGAS USA, LLC
9010 CLAIREMONT MESA BLVD
SAN DIEGO, CA 92123-1208
858-279-8200

**SOLD BY:**
AIRGAS USA, LLC
9010 CLAIREMONT MESA BLVD
SAN DIEGO, CA 92123-1208
858-279-8200

**DELIVERY ORDER #** 8056153249
**PAGE** 1 **OF** 1
**ORDER DATE:** 09/14/2016
**SCH SHIP DATE:** 09/15/2016
**PRINTED:** 20:34 09/15/2016
**SALES ORDER:** 1051087659
**SHIPMENT:** 3121706

**SHIP TO:** 1658108
LIT'L PEPPER GOURMET
8911 COMPLEX DR STE C
SAN DIEGO, CA 92123-1412 US
858-565-6552

**SOLD TO:** 1658108
LIT'L PEPPER GOURMET
8911 COMPLEX DR STE C
SAN DIEGO, CA 92123-1412 US

**CUST PO #**
**RELEASE #**
**ORD BY** Heni 858-565-6552
**ENT BY** SARABUILES

| Order Type | Payment Terms | Incoterm | Route | Sales Office | Plant | Sales Org | Total Containers Ship | Total Containers Return |
|---|---|---|---|---|---|---|---|---|
| Standard Order | NET 30 | Airgas Truck | Airgas Truck | W051 | W105 | WE00 | 2 | 2 |

| Qty Ship | UOM Type | HM | Description & Hazard Class | Qty Order | Containers Ship | Containers Ret | Vol /Wt | Unit Price | |
|---|---|---|---|---|---|---|---|---|---|
| 2 | CL | X | UN1013 CARBON DIOXIDE 2.2 | | | | | | |
| | | | **Line# 10 Material# CD FG50 Stor. Loc. F001** | 2 | 2 | 0 | 100 LB | 73.33 | |
| | | | CARBON DIOXIDE FOOD GRADE 50LBS CGA 320 | | | | 318.000 LB | /CL | (H) |
| | | | Delivery Flat Fee | | | | | | 22.84 |
| | | | Fuel Surcharge Flat | | | | | | 3.95 |
| | | | Airgas Hazmat Charge (H) - see Itemized Charges on reverse or visit | | | | | | 15.65 |
| | | | www.Airgas.com/terms-of-sale | | | | | | |

**EMERGENCY CONTACT:1-866-734-3438**

PURCHASER AGREES TO OBTAIN SAFETY DATA SHEETS (SDS) FROM ONE OF THEFOLLOWING SOURCES ; POINT OF PURCHASE, AIRGAS WEB SITE AT <WWW.AIRGAS.COM> OR BY CALLING THE ABOVE LISTED EMERGENCY CONTACT PHONE NUMBER AND SELECTING OPTION #3

THIS IS TO CERTIFY THAT THE ABOVE NAMED MATERIALS ARE PROPERLY CLASSIFIED, DESCRIBED, PACKAGED, MARKED AND LABELED AND ARE IN PROPER CONDITION FOR TRANSPORTATION ACCORDING TO THE APPLICABLE REGULATIONS OF THE DEPARTMENT OF TRANSPORTATION

AIRGAS PERSONNEL DATE 9-14-16 T.O.D.

PLACARDS OFFERED
ACCEPT REJECT
CUSTOMER MUST INITIAL CHOICE

THIS AGREEMENT IS SUBJECT TO AIRGAS' STANDARD TERMS AND CONDITIONS SEE REVERSE SIDE FOR IMPORTANT SAFETY INFORMATION.

ACCEPTED FOR THE ABOVE CUSTOMER **X**

NAME PLEASE PRINT

**INTERNAL USE ONLY**

| Filled By | Staging Area | Total PKGS | Tracking / Pro Number | Freight Charges | Total Weight* |
|---|---|---|---|---|---|
| | | | | | 318 LB |

*Total weight for materials with weight displayed only

**Delivery #** 8056153249

AIRGAS TERMS AND CONDITIONS OF SALE

*WARNING: TRANSPORT AND USE OF COMPRESSED GASES MAY BE EXTREMELY DANGEROUS. DO NOT TRANSPORT WITHOUT PROTECTIVE CAPS, IN CONFINED SPACES OR IN ANY OTHER IMPROPER MANNER. ALWAYS TRANSPORT CYLINDERS IN A SECURED UPRIGHT POSITION. SAFETY DATA SHEETS ("SDS") ARE AVAILABLE AT AIRGAS.COM.*

EACH SALE OF PRODUCTS BY AIRGAS USA, LLC, OR ONE OF ITS AFFILIATES ("SELLER"), SHALL BE GOVERNED BY THE TERMS AND CONDITIONS BELOW AND THE TERMS OF SALE FOUND AT HTTP://WWW.AIRGAS.COM/TERMS-OF-SALE (COLLECTIVELY, THE "TERMS"). IF YOU DO NOT HAVE ACCESS TO THE INTERNET, YOU MAY REQUEST A COPY OF THE TERMS OF SALE FROM YOUR AIRGAS CUSTOMER SERVICE REPRESENTATIVE. "BUYER" REFERS TO THE PURCHASER OF PRODUCTS FROM SELLER. "PRODUCT(S)" REFERS TO ANY GOODS PROVIDED BY SELLER TO BUYER.

**1. CYLINDERS:** UNLESS OTHERWISE SPECIFIED, CYLINDERS, FITTINGS AND CAPS COVERED BY THESE TERMS ARE RENTED TO BUYER AT SELLER'S CURRENT DAILY RATES, BEGINNING WITH THE DATE OF DELIVERY. RENTAL CHARGES ARE ASSESSED AS OF THE LAST DAY OF EACH MONTH OR AT THE START OF EACH ANNUAL LEASE PERIOD, AS APPLICABLE. BUYER SHALL NOT PERMIT CYLINDERS OR OTHER STORAGE CONTAINERS FURNISHED HEREUNDER TO BE FILLED WITH ANY PRODUCT NOT FURNISHED BY SELLER OR ITS AUTHORIZED AGENT. BUYER SHALL RETURN, IN GOOD AND NON-CONTAMINATED CONDITION, ALL CYLINDERS, WITH VALVES CLOSED, COMPLETE WITH CAPS AND FITTINGS AND SHALL PAY SELLER THE REPLACEMENT VALUE OF ANY LOST OR DAMAGED CYLINDERS, CAPS OR FITTINGS AND FOR ANY LOSS OR DAMAGE CAUSED BY BUYER CONTAMINATION. UNLESS SUBJECT TO AN ANNUAL LEASE, ANY CYLINDER NOT RETURNED TO SELLER WITHIN THREE (3) MONTHS OF ITS SHIPMENT DATE WILL BE CONSIDERED LOST. PAYMENT BY THE BUYER OF CHARGES FOR DAMAGED, LOST OR DESTROYED CYLINDERS SHALL NOT GIVE ANY OWNERSHIP INTEREST IN THE CYLINDERS TO THE BUYER.

**2. PAYMENT:** UNLESS OTHERWISE SPECIFIED, BUYER SHALL MAKE PAYMENT IN FULL WITHIN THIRTY (30) DAYS AFTER THE DATE OF SELLER'S INVOICE. IF BUYER FAILS TO MAKE ANY PAYMENT WHEN AND AS DUE, SELLER MAY CHARGE BUYER INTEREST AT THE LESSER OF ONE-AND-ONE-HALF PERCENT (1.5%) PER MONTH (MINIMUM TWO DOLLARS ($2.00)) OR THE HIGHEST RATE PERMITTED BY LAW CALCULATED FROM AND EXCLUDING THE DUE DATE THEREOF TO AND INCLUDING THE DATE OF PAYMENT. IF BUYER REQUESTS PAYMENT TERMS OTHER THAN CASH OR CASH ON DELIVERY (COD), BUYER REPRESENTS THAT THE PURCHASES ARE MADE FOR BUSINESS, COMMERCIAL OR AGRICULTURAL PURPOSES AND NOT FOR PERSONAL, HOUSEHOLD, OR FAMILY USE. IF BUYER HAS RECEIVED CREDIT APPROVAL FROM SELLER, CONTINUED OPEN ACCOUNT CREDIT IS SUBJECT TO SELLER'S ASSESSMENT OF BUYER'S FINANCIAL CONDITION AND ABILITY TO PAY. IF SELLER EMPLOYS ANY COLLECTION AGENCY OR ATTORNEY TO COLLECT ANY AMOUNT DUE SELLER, AND/OR TO REPOSSESS ANY PRODUCTS, BUYER SHALL PAY ALL COLLECTION FEES, ATTORNEYS' FEES, AND COURT COSTS, IN ADDITION TO THE AMOUNT OTHERWISE UNPAID.

**3. TAXES:** TAXES IMPOSED BY FEDERAL, STATE OR LOCAL GOVERNMENTS ON THE SALE, USE OR POSESSION OF PRODUCTS SHALL BE PAID BY BUYER IN ADDITION TO THE PURCHASE PRICE.

**4. RETURNS:** NO PRODUCTS SHALL BE RETURNED WITHOUT SELLER'S WRITTEN AUTHORIZATION. BUYER SHALL PAY A FIFTEEN PERCENT (15%) RESTOCKING CHARGE ON ALL PRODUCTS RETURNED, EXCEPT FOR RETURNS MADE UNDER SECTION 7 HEREOF.

**5. WARRANTY AND CLAIMS:** SELLER WARRANTS THAT, AT THE TIME OF DELIVERY, ALL PRODUCTS FURNISHED HEREUNDER SHALL CONFORM TO THE MANUFACTURER'S OR SELLER'S SPECIFICATION FOR THE PERIOD OF TIME SET FORTH IN SUCH SPECIFICATION OR, IF NONE, FOR A PERIOD OF NINETY (90) DAYS. **SELLER SPECIFICALLY DISCLAIMS ANY OTHER EXPRESS OR IMPLIED STANDARDS, GUARANTEES, OR WARRANTIES, INCLUDING ANY WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE OR NON-INFRINGEMENT AND ANY WARRANTIES THAT MAY BE ALLEGED TO ARISE AS A RESULT OF CUSTOM OR USAGE.** ALL CLAIMS BY BUYER HAVING ANYTHING TO DO WITH ANY PRODUCTS FURNISHED BY SELLER SHALL BE MADE IN WRITING WITHIN TEN (10) DAYS AFTER THE DELIVERY OF THE PRODUCTS AND FAILURE OF BUYER TO GIVE SUCH NOTICE SHALL CONSTITUTE A COMPLETE WAIVER BY BUYER OF ANY SUCH CLAIMS AND DEFENSE FOR SELLER AGAINST ANY SUCH CLAIMS.

**6. LIMITATION OF LIABILITY: SELLER SHALL NOT BE LIABLE FOR ANY DIRECT (EXCEPT AS EXPRESSLY PROVIDED HEREIN), INDIRECT, SPECIAL, INCIDENTAL, CONSEQUENTIAL AND/OR PUNITIVE DAMAGES, ARISING OR ALLEGED TO ARISE OUT OF OR IN CONNECTION WITH ANY PRODUCT OR EQUIPMENT SOLD OR LEASED HEREUNDER, WHETHER SUCH DAMAGE RESULTS FROM ANY NEGLIGENT ACT OR OMISSION OR IS RELATED TO STRICT LIABILITY, OR OTHERWISE.**

**7. REMEDY: BUYER'S EXCLUSIVE REMEDY FOR EACH UNEXCUSED FAILURE OF PRODUCT TO MEET SPECIFICATION SHALL BE, AT SELLER'S OPTION, TO RECEIVE A REFUND OF THE PRICE OF SUCH NON-CONFORMING PRODUCT OR REPLACEMENT THEREOF WITH PRODUCT THAT MEETS SUCH SPECIFICATION. BUYER'S EXCLUSIVE REMEDY FOR THE UNEXCUSED FAILURE, BY SELLER TO DELIVER PRODUCT AS SPECIFIED, REGARDLESS OF THE CAUSE OF SUCH FAILURE, INCLUDING NEGLIGENCE, SHALL BE TO RECOVER THE DIFFERENCE BETWEEN THE COST TO BUYER OF ANY SUBSTITUTE FOR PRODUCT NOT DELIVERED AND THE LESSER PRICE OF SUCH QUANTITY OF PRODUCT HEREUNDER.**

**8. COMPLIANCE/SDS:** BUYER SHALL COMPLY WITH ALL APPLICABLE LAWS REGARDING THE SAFE HANDLING, TRANSPORTATION AND USE OF PRODUCTS. BUYER ACKNOWLEDGES AND AGREES THAT SELLER HAS PROVIDED RELEVANT SDS. SDS ARE AVAILABLE: (I) AT THE LOCAL AIRGAS BRANCH; (II) BY CALLING 919-368-8518; OR (III) AT AIRGAS.COM.

**9. ITEMIZED CHARGES:** THE TOTAL AMOUNT DUE FROM BUYER MAY INCLUDE VARIOUS ITEMIZED CHARGES, INCLUDING: CHARGES FOR THE HANDLING OF HAZARDOUS MATERIALS AND FOR COMPLIANCE WITH LAWS AND REGULATIONS CONCERNING HAZARDOUS MATERIALS; CHARGES FOR HANDLING, DELIVERY, AND SHIPPING; AND/OR CHARGES FOR ENERGY OR FUEL. NONE OF THE CHARGES REPRESENTS A TAX OR FEE PAID TO OR IMPOSED BY ANY GOVERNMENTAL AUTHORITY AND ALL OF THE CHARGES ARE RETAINED BY SELLER. SELLER HAS NOT SPECIFICALLY QUANTIFIED THE RELATIONSHIP BETWEEN THE CHARGES AND THE ACTUAL COSTS ASSOCIATED WITH THE CHARGES, WHICH CAN VARY BY PRODUCT, SERVICE, TIME AND PLACE, AMONG OTHER THINGS.

## EMERGENCY RESPONSE INFORMATION

**CALL Emergency Response Telephone Number on Shipping Paper first.**

### PROPANE METHANE HYDROGEN

#### POTENTIAL HAZARDS

*FIRE OR EXPLOSION*

- **EXTREMELY FLAMMABLE.**

**CAUTION: Hydrogen (UN1049), Deuterium (UN1957), Hydrogen, refrigerated liquid (UN1966) and Methane (UN1971) are lighter than air and will rise. Hydrogen and Deuterium fires are difficult to detect since they burn with an invisible flame. Use an alternate method of detection (thermal camera, broom handle, etc.).**

*HEALTH*

#### PUBLIC SAFETY

*PROTECTIVE CLOTHING*

*EVACUATION*

#### EMERGENCY RESPONSE

**FIRE – DO NOT EXTINGUISH A LEAKING GAS FIRE UNLESS LEAK CAN BE STOPPED.**

**CAUTION: Hydrogen (UN1049), Deuterium (UN1957) and Hydrogen, refrigerated liquid (UN1966) burn with an invisible flame. Hydrogen and Methane mixture, compressed (UN2034) may burn with an invisible flame.**

*SPILL OR LEAK*

**CAUTION: When in contact with refrigerated/cryogenic liquids, many materials become brittle and are likely to break without warning.**

*FIRST AID*

### ACETYLENE MAPP

#### POTENTIAL HAZARDS

*FIRE OR EXPLOSION*

- **EXTREMELY FLAMMABLE**

*HEALTH*

#### PUBLIC SAFETY

*PROTECTIVE CLOTHING*

*EVACUATION*

#### EMERGENCY RESPONSE

**FIRE – DO NOT EXTINGUISH A LEAKING GAS FIRE UNLESS LEAK CAN BE STOPPED**

*SPILL OR LEAK*

*FIRST AID*

### AIR OXYGEN NITROUS OXIDE LIQUID $O_2$

#### POTENTIAL HAZARDS

*FIRE OR EXPLOSION*

*HEALTH*

#### PUBLIC SAFETY

*PROTECTIVE CLOTHING*

*EVACUATION*

#### EMERGENCY RESPONSE

*SPILL OR LEAK*

**CAUTION: When in contact with refrigerated/cryogenic liquids, many materials become brittle and are likely to break without warning.**

*FIRST AID*

### $CO_2$ LIQUID ARGON LIQUID $CO_2$ LIQUID $N_2$

#### POTENTIAL HAZARDS

*HEALTH*

*FIRE OR EXPLOSION*

- **Non-flammable gases.**

#### PUBLIC SAFETY

*PROTECTIVE CLOTHING*

*EVACUATION*

#### EMERGENCY RESPONSE

*SPILL OR LEAK*

**CAUTION: When in contact with refrigerated/cryogenic liquids, many materials become brittle and are likely to break without warning.**

*FIRST AID*

### ARGON HELIUM NITROGEN

#### POTENTIAL HAZARDS

*HEALTH*

*FIRE OR EXPLOSION*

- **Non-flammable gases.**

#### PUBLIC SAFETY

*PROTECTIVE CLOTHING*

*EVACUATION*

#### EMERGENCY RESPONSE

*SPILL OR LEAK*

*FIRST AID*

TO ENSURE PROPER CREDIT, PLEASE RETURN THE UPPER PORTION WITH YOUR REMITTANCE. FOR QUESTIONS ON YOUR ACCOUNT PLEASE CALL: 800-224-7427

| ORDER NO. | INVOICE NO. | INVOICE DATE | SOLD TO NO. | SOLD TO NAME |
|---|---|---|---|---|
| 1051087659 | 9055515895 | 09/16/2016 | 1658108 | LIT'L PEPPER GOURMET |

| PO / RELEASE | ORDERED BY | SHIP VIA | PAYMENT TERMS | ORDER DATE |
|---|---|---|---|---|
| | Heni 858-565-6552 | ARGTRK | NET 30 | 09/14/2016 |

| DELIVERY NO. / DESCRIPTION | MATERIAL NUMBER | QTY SHIP'D | UOM | QTY B/O | CYLINDER SHP'D | CYLINDER RET'D | UNIT PRICE | UOM | AMOUNT |
|---|---|---|---|---|---|---|---|---|---|
| 8056153249 | CD FG50 | 2 | CL | | 2 | 2 | 73.33 | CL | 146.66 N |
| CARBON DIOXIDE FG/IND 50LB (Vol: 100 LBS) | | | | | | | | | (H) |
| | | | | | | | Sale subtotal: | | 146.66 |
| | Delivery Flat Fee | | | | | | | | 22.84 |
| | Fuel Surcharge Flat | | | | | | | | 3.95 |
| | Airgas Hazmat Charge | | | | | | | | 15.65 |

Airgas Hazmat Charge (H) - see Itemized Charges on reverse or visit www.Airgas.com/terms-of-sale

| AMOUNT | 189.10 |
|---|---|

Airgas
an Air Liquide company

AIRGAS USA, LLC
PO Box 93500
Long Beach, CA 90809-3500

SHIP TO: 1658108
LIT'L PEPPER GOURMET
8911 COMPLEX DR STE C
SAN DIEGO CA 92123-1412

FOR WIRE TRANSFER PAYMENTS
Airgas USA, LLC
Acct No 8606074158
PNC Bank, ABA No 031000053

For change of address
email to: wdiv_adrss@airgas.com
or call 562-627-3139

REV 6.1.16 0010898

Page 1 of 1

Terms of Sale: Each sale of Goods or services by an Airgas™ company is and shall be governed by the terms and conditions on this Disclosure, the Terms of Sale attached to the Account Application (if one has been completed), and the Terms of Sale found at http://www.airgas.com/terms-of-sale (collectively the "Terms of Sale"). Each Contract for the sale of Goods or services between Seller and Buyer ("Contract") shall include these Terms of Sale, together with any other material describing the Goods or services being sold, their price, delivery terms, and all other special provisions. "Goods" refers to any items of tangible personal property described in any Contract or otherwise provided by Seller to Buyer.

Notice Regarding Cylinder Rentals/Leases and Responsibility: This document shows the total number of cylinders charged to Buyer (i.e., cylinders which Seller has rented or leased to Buyer, and which Buyer has not returned) according to Seller's records as of the month ending date shown. The number of cylinders thus charged to Buyer shall be considered correct for all contractual purposes between Buyer and Seller, unless Buyer reports to Seller in writing any errors Buyer claims within 60 days after the date hereof. Buyer agrees to continue to pay rent on all cylinders charged to Buyer until Buyer has either (i) returned such cylinders to Seller in good working order or (ii) pays Seller the replacement cost thereof.

Refrigerant Cylinder Returns/Deposit: Refillable refrigerant cylinders shall remain the property of Airgas or its third-party vendors. Such cylinders shall not be used by Customer for purposes other than the storage of gas products purchased from Airgas or the return and reclamation of certain gases (e.g., refrigerants). Each refillable cylinder will be subject to a cylinder deposit fee, as established by Airgas from time to time. Airgas will refund the deposit fee when the Customer returns the refrigerant cylinder unless the cylinder's condition is deemed to be unfit for reuse, as determined by Airgas, which determination shall be irrefutable sixty days after the cylinder was returned.

Warranty: All products, other items of sale, cylinders and other containers furnished by an Airgas company, shall conform to the description thereof published by the manufacturer at the time of sale and will meet Seller's purity specifications for all gas products. **SELLER SPECIFICALLY DISCLAIMS ANY OTHER EXPRESS OR IMPLIED STANDARDS, GUARANTEES, OR WARRANTIES, INCLUDING ANY WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE OR NON-INFRINGEMENT AND ANY WARRANTIES THAT MAY BE ALLEGED TO ARISE AS A RESULT OF CUSTOM OR USAGE.**

Limitation of Liability: **SELLER SHALL BE LIABLE ONLY FOR THE REPAIR OR REPLACEMENT OF DEFECTIVE GAS CYLINDERS AND PRODUCTS, INCLUDING THE REPLACEMENT OF GASES THAT DO NOT MEET ITS PURITY SPECIFICATIONS WITH GASES THAT DO MEET SUCH SPECIFICATIONS. BUYER KNOWINGLY AND FULLY ASSUMES THE RISKS OF TRANSPORTING AND USING COMPRESSED GASES. SELLER SHALL NOT BE LIABLE FOR ANY DIRECT (EXCEPT AS EXPRESSLY PROVIDED HEREIN), INDIRECT, SPECIAL, INCIDENTAL, CONSEQUENTIAL AND/OR PUNITIVE DAMAGES, ARISING OR ALLEGED TO ARISE OUT OF OR IN CONNECTION WITH ITS PERFORMANCE OF ANY OBLIGATIONS ORANY PRODUCT, OTHER ITEMS OF SALE, OR EQUIPMENT SOLD OR LEASED BY SELLER, WHETHER SUCH DAMAGE RESULTS FROM ANY NEGLIGENT ACT OR OMISSION OR IS RELATED TO STRICT LIABILITY OR OTHERWISE.**

Terms of Payment: Unless otherwise specified in a Contract, Buyer shall make payment in full within 30 days after the date of Seller's invoice. Continued open account credit is subject to Seller's assessment of Buyer's financial condition and ability to pay. A late payment charge of 1.5% on the unpaid, past due balance, will be assessed monthly (minimum two dollars ($2.00), or the maximum lawful rate allowable in the state where the Goods are delivered, whichever is less.

Surcharges: Upon notice and receipt of underlying documentation, Buyer shall pay to Seller a surcharge in the event of any extraordinary or emergency increases in the cost of (a) power and/or raw materials used in the production of Products and/or (b) fuel.

Title to Equipment: Title to all rental equipment shall remain in Seller's name. Buyer shall not cover, modify, remove or otherwise disturb any identification or other indicia of Seller's ownership on any rental equipment.

Taxes: Any taxes imposed by federal, state, or other governmental authority on the sale, use or possession of Goods, or the sale or performance of services by an Airgas company, shall be paid by Buyer in addition to the purchase price.

Itemized Charges: (a) The total amount due from the Buyer may include various itemized charges, including: charges for the handling of hazardous materials and for compliance with laws and regulations concerning hazardous materials; charges for handling, delivery and shipping; and/or charges for energy or fuel. None of the charges represent a tax or fee paid to or imposed by any government authority, and all of the charges are retained by the Seller. The Seller has not specifically quantified the relationship between the charges and the actual costs associated with the charges, which can vary by product, service, time and place, among other things. (b) No such charges not already provided for in a Rider will be imposed without mutual consent.

Government Contracts: Certain Airgas companies are U.S. government contractors and subcontractors and are subject to and adhere to the requirements of federal laws, executive orders, and attendant rules and regulations, specifically Executive Order No. 11246, the Rehabilitation Act of 1973 and the Vietnam Era Veterans Readjustment Assistance Act of 1974, all as amended.

**Airgas eBusiness**

Now doing business with Airgas is easier than ever with our eBusiness website, **http:// www.airgas.com**. Visit us online today to see how **www.airgas.com** can save you time and money.

165810817062473415000000067080

TO ENSURE PROPER CREDIT, PLEASE RETURN THE UPPER PORTION WITH YOUR REMITTANCE. FOR QUESTIONS ON YOUR ACCOUNT PLEASE CALL: 800-224-7427

| ORDER NO. | INVOICE NO. | INVOICE DATE | SOLD TO NO. | SOLD TO NAME |
|---|---|---|---|---|
| 1057432270 | 9062473415 | 04/17/2017 | 1658108 | LIT'L PEPPER GOURMET |

| PO / RELEASE | ORDERED BY | SHIP VIA | PAYMENT TERMS | ORDER DATE |
|---|---|---|---|---|
| PHONE CALL | HANI 858 565 6552 | CUPU | NET 30 | 04/17/2017 |

| DELIVERY NO. / DESCRIPTION | MATERIAL NUMBER | QTY SHIP'D | UOM | QTY B/O | CYLINDER SHP'D | CYLINDER RET'D | UNIT PRICE | UOM | AMOUNT |
|---|---|---|---|---|---|---|---|---|---|
| 8062873869 | CD FG20 | 1 | CL | | 1 | 1 | 58.18 | CL | 58.18 N |
| CARBON DIOXIDE FG/IND 20LB (Vol: 20 LBS) | | | | | | | | | (H) |
| | | | | | | | Sale subtotal: | | 58.18 |
| | Airgas Hazmat Charge | | | | | | | | 8.90 |

Airgas Hazmat Charge (H) - see Itemized Charges on reverse or visit www.Airgas.com/terms-of-sale

| AMOUNT | 67.08 |
|---|---|

Airgas.
an Air Liquide company

AIRGAS USA, LLC
PO Box 93500
Long Beach, CA 90809-3500

SHIP TO: 1658108
LIT'L PEPPER GOURMET
8911 COMPLEX DR STE C
SAN DIEGO CA 92123-1412

FOR WIRE TRANSFER PAYMENTS
Airgas USA, LLC
Acct No 8606074158
PNC Bank, ABA No 031000053

For change of address
email to: wdiv_adrss@airgas.com
or call 562-627-3279

REV 6.1.16 0018328

Page 1 of 1

Disclosure

Terms of Sale: Each sale of Goods or services by an Airgas™ company is and shall be governed by the terms and conditions on this Disclosure, the Terms of Sale affixed to the Account Application (if one has been completed), and the Terms of Sale found at http://www.airgas.com/terms-of-sale (collectively the "Terms of Sale"). Each Contract for the sale of Goods or services between Seller and Buyer ("Contract") shall include these Terms of Sale, together with any other material describing the Goods or services being sold, their price, delivery terms, and all other special provisions. "Goods" refers to any items of tangible personal property described in any Contract or otherwise provided by Seller to Buyer.

Notice Regarding Cylinder Rentals/Leases and Responsibility: This document shows the total number of cylinders charged to Buyer (i.e., cylinders which Seller has rented or leased to Buyer, and which Buyer has not returned) according to Seller's records as of the month ending date shown. The number of cylinders thus charged to Buyer shall be considered correct for all contractual purposes between Buyer and Seller, unless Buyer reports to Seller in writing any errors Buyer claims within 60 days after the date hereof. Buyer agrees to continue to pay rent on all cylinders charged to Buyer until Buyer has either (i) returned such cylinders to Seller in good working order or (ii) pays Seller the replacement cost thereof.

Refrigerant Cylinder Returns/Deposit: Refillable refrigerant cylinders shall remain the property of Airgas or its third-party vendors. Such cylinders shall not be used by Customer for purposes other than the storage of gas products purchased from Airgas or the return and reclamation of certain gases (e.g., refrigerants). Each refillable cylinder will be subject to a cylinder deposit fee, as established by Airgas from time to time. Airgas will refund the deposit fee when the Customer returns the refrigerant cylinder unless the cylinder's condition is deemed to be unfit for reuse, as determined by Airgas, which determination shall be irrefutable sixty days after the cylinder was returned.

Warranty: All products, other items of sale, cylinders and other containers furnished by an Airgas company shall conform to the description thereof published by the manufacturer at the time of sale and will meet Seller's purity specifications for all gas products. SELLER SPECIFICALLY DISCLAIMS ANY OTHER EXPRESS OR IMPLIED STANDARDS, GUARANTEES, OR WARRANTIES, INCLUDING ANY WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE OR NON-INFRINGEMENT AND ANY WARRANTIES THAT MAY BE ALLEGED TO ARISE AS A RESULT OF CUSTOM OR USAGE.

Limitation of Liability: SELLER SHALL BE LIABLE ONLY FOR THE REPAIR OR REPLACEMENT OF DEFECTIVE GAS CYLINDERS AND PRODUCTS, INCLUDING THE REPLACEMENT OF GASES THAT DO NOT MEET ITS PURITY SPECIFICATIONS WITH GASES THAT DO MEET SUCH SPECIFICATIONS. BUYER KNOWINGLY AND FULLY ASSUMES THE RISKS OF TRANSPORTING AND USING COMPRESSED GASES. SELLER SHALL NOT BE LIABLE FOR ANY DIRECT (EXCEPT AS EXPRESSLY PROVIDED HEREIN), INDIRECT, SPECIAL, INCIDENTAL, CONSEQUENTIAL AND/OR PUNITIVE DAMAGES, ARISING OR ALLEGED TO ARISE OUT OF OR IN CONNECTION WITH ITS PERFORMANCE OF ANY OBLIGATIONS ORANY PRODUCT, OTHER ITEMS OF SALE, OR EQUIPMENT SOLD OR LEASED BY SELLER, WHETHER SUCH DAMAGE RESULTS FROM ANY NEGLIGENT ACT OR OMISSION OR IS RELATED TO STRICT LIABILITY, OR OTHERWISE.

Terms of Payment: Unless otherwise specified in a Contract, Buyer shall make payment in full within 30 days after the date of Seller's invoice. Continued open account credit is subject to Seller's assessment of Buyer's financial condition and ability to pay. A late payment charge of 1.5% on the unpaid, past due balance, will be assessed monthly (minimum two dollars ($2.00)), or the maximum lawful rate allowable in the state where the Goods are delivered, whichever is less.

Surcharges: Upon notice and receipt of underlying documentation, Buyer shall pay to Seller a surcharge in the event of any extraordinary or emergency increases in the cost of (a) power and/or raw materials used in the production of Products and/or (b) fuel.

Title to Equipment: Title to all rental equipment shall remain in Seller's name. Buyer shall not cover, modify, remove or otherwise disturb any identification or other indicia of Seller's ownership on any rental equipment.

Taxes: Any taxes imposed by federal, state, or other governmental authority on the sale, use or possession of Goods, or the sale or performance of services by an Airgas company, shall be paid by Buyer in addition to the purchase price.

Itemized Charges: (a) The total amount due from the Buyer may include various itemized charges, including: charges for the handling of hazardous materials and for compliance with laws and regulations concerning hazardous materials; charges for handling, delivery and shipping; and/or charges for energy or fuel. None of the charges represent a tax or fee paid to or imposed by any government authority, and all of the charges are retained by the Seller. The Seller has not specifically quantified the relationship between the charges and the actual costs associated with the charges, which can vary by product, service, time and place, among other things. (b) No such charges not already provided for in a Rider will be imposed without mutual consent.

Government Contracts: Certain Airgas companies are U.S. government contractors and subcontractors and are subject to and adhere to the requirements of federal laws, executive orders, and attendant rules and regulations, specifically Executive Order No. 11246, the Rehabilitation Act of 1973 and the Vietnam Era Veterans Readjustment Assistance Act of 1974, all as amended.

**Airgas eBusiness**

Now doing business with Airgas is easier than ever with our eBusiness website, http:// **www.airgas.com**. Visit us online today to see how **www.airgas.com** can save you time and money.

TO ENSURE PROPER CREDIT, PLEASE RETURN THE UPPER PORTION WITH YOUR REMITTANCE. FOR QUESTIONS ON YOUR ACCOUNT PLEASE CALL: 800-224-7427

| ORDER NO. | INVOICE NO. | INVOICE DATE | SOLD TO NO. | SOLD TO NAME |
|---|---|---|---|---|
| 1057430464 | 9062570594 | 04/18/2017 | 1658108 | LIT'L PEPPER GOURMET |

| PO / RELEASE | ORDERED BY | SHIP VIA | PAYMENT TERMS | ORDER DATE |
|---|---|---|---|---|
| BEFORE 2PM | HANI 858 565 6552 | | NET 30 | 04/17/2017 |

| DELIVERY NO. / DESCRIPTION | MATERIAL NUMBER | QTY SHIP'D | UOM | QTY B/O | CYLINDER SHP'D | CYLINDER RET'D | UNIT PRICE | UOM | AMOUNT |
|---|---|---|---|---|---|---|---|---|---|
| 8062898559 | CD FG50 | 2 | CL | | 2 | 2 | 76.26 | CL | 152.52 N |
| CARBON DIOXIDE FG/IND 50LB (Vol: 100 LBS) | | | | | | | | | (H) |
| | CY-CD FG20 | 0 | | | | 1 | | | 0.00 |
| | | | | | | | Sale subtotal: | | 152.52 |
| | Delivery Flat Fee | | | | | | | | 22.84 |
| | Fuel Surcharge Flat | | | | | | | | 4.90 |
| | Airgas Hazmat Charge | | | | | | | | 19.75 |

Airgas Hazmat Charge (H) - see Itemized Charges on reverse or visit www.Airgas.com/terms-of-sale

| AMOUNT | 200.01 |
|---|---|

Airgas.
an Air Liquide company

AIRGAS USA, LLC
PO Box 93500
Long Beach, CA 90809-3500

SHIP TO: 1658108
LIT'L PEPPER GOURMET
8911 COMPLEX DR STE C
SAN DIEGO CA 92123-1412

FOR WIRE TRANSFER PAYMENTS
Airgas USA, LLC
Acct No 8606074158
PNC Bank, ABA No 031000053

For change of address
email to: wdiv_adrss@airgas.com
or call 562-627-3279

REV 6.1.16 0020091

Page 1 of 1

Terms of Sale: Each sale of Goods or services by an Airgas™ company is and shall be governed by the terms and conditions on this Disclosure, the "Terms of Sale affixed to the Account Application (if one has been completed), and the Terms of Sale found at http://www.airgas.com/terms-of-sale (collectively the "Terms of Sale"). Each Contract for the sale of Goods or services between Seller and Buyer ("Contract") shall include these Terms of Sale, together with any other material describing the Goods or services being sold, their price, delivery terms, and all other special provisions. "Goods" refers to any items of tangible personal property described in any Contract or otherwise provided by Seller to Buyer.

Notice Regarding Cylinder Rentals/Leases and Responsibility: This document shows the total number of cylinders charged to Buyer (i.e., cylinders which Seller has rented or leased to Buyer, and which Buyer has not returned) according to Seller's records as of the month ending date shown. The number of cylinders thus charged to Buyer shall be considered correct for all contractual purposes between Buyer and Seller, unless Buyer reports to Seller in writing any errors Buyer claims within 60 days after the date hereof. Buyer agrees to continue to pay rent on all cylinders charged to Buyer until Buyer has either (i) returned such cylinders to Seller in good working order or (ii) pays Seller the replacement cost thereof.

Refrigerant Cylinder Returns/Deposit: Refillable refrigerant cylinders shall remain the property of Airgas or its third-party vendors. Such cylinders shall not be used by Customer for purposes other than the storage of gas products purchased from Airgas or the return and reclamation of certain gases (e.g., refrigerants). Each refillable cylinder will be subject to a cylinder deposit fee, as established by Airgas from time to time. Airgas will refund the deposit fee when the Customer returns the refrigerant cylinder unless the cylinder's condition is deemed to be unfit for reuse, as determined by Airgas, which determination shall be irrefutable sixty days after the cylinder was returned.

Warranty: All products, other items of sale, cylinders and other containers furnished by an Airgas company, shall conform to the description thereof published by the manufacturer at the time of sale and will meet Seller's purity specifications for all gas products. **SELLER SPECIFICALLY DISCLAIMS ANY OTHER EXPRESS OR IMPLIED STANDARDS, GUARANTEES, OR WARRANTIES, INCLUDING ANY WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE OR NON-INFRINGEMENT AND ANY WARRANTIES THAT MAY BE ALLEGED TO ARISE AS A RESULT OF CUSTOM OR USAGE.**

Limitation of Liability: **SELLER SHALL BE LIABLE ONLY FOR THE REPAIR OR REPLACEMENT OF DEFECTIVE GAS CYLINDERS AND PRODUCTS, INCLUDING THE REPLACEMENT OF GASES THAT DO NOT MEET ITS PURITY SPECIFICATIONS WITH GASES THAT DO MEET SUCH SPECIFICATIONS. BUYER KNOWINGLY AND FULLY ASSUMES THE RISKS OF TRANSPORTING AND USING COMPRESSED GASES. SELLER SHALL NOT BE LIABLE FOR ANY DIRECT (EXCEPT AS EXPRESSLY PROVIDED HEREIN), INDIRECT, SPECIAL, INCIDENTAL, CONSEQUENTIAL AND/OR PUNITIVE DAMAGES, ARISING OR ALLEGED TO ARISE OUT OF OR IN CONNECTION WITH ITS PERFORMANCE OF ANY OBLIGATIONS ORANY PRODUCT, OTHER ITEMS OF SALE, OR EQUIPMENT SOLD OR LEASED BY SELLER, WHETHER SUCH DAMAGE RESULTS FROM ANY NEGLIGENT ACT OR OMISSION OR IS RELATED TO STRICT LIABILITY, OR OTHERWISE.**

Terms of Payment: Unless otherwise specified in a Contract, Buyer shall make payment in full within 30 days after the date of Seller's invoice. Continued open account credit is subject to Seller's assessment of Buyer's financial condition and ability to pay. A late payment charge of 1.5% on the unpaid, past due balance, will be assessed monthly (minimum two dollars ($2.00), or the maximum lawful rate allowable in the state where the Goods are delivered, whichever is less.

Surcharges: Upon notice and receipt of underlying documentation, Buyer shall pay to Seller a surcharge in the event of any extraordinary or emergency increases in the cost of (a) power and/or raw materials used in the production of Products and/or (b) fuel.

Title to Equipment: Title to all rental equipment shall remain in Seller's name. Buyer shall not cover, modify, remove or otherwise disturb any identification or other indicia of Seller's ownership on any rental equipment.

Taxes: Any taxes imposed by federal, state, or other governmental authority on the sale, use or possession of Goods, or the sale or performance of services by an Airgas company, shall be paid by Buyer in addition to the purchase price.

Itemized Charges: (a) The total amount due from the Buyer may include various itemized charges, including charges for the handling of hazardous materials and for compliance with laws and regulations concerning hazardous materials; charges for handling, delivery and shipping, and/or charges for energy or fuel. None of the charges represent a tax or fee paid to or imposed by any government authority, and all of the charges are retained by the Seller. The Seller has not specifically quantified the relationship between the charges and the actual costs associated with the charges, which can vary by product, service, time and place, among other things. (b) No such charges not already provided for in a Rider will be imposed without mutual consent.

Government Contracts: Certain Airgas companies are U.S. government contractors and subcontractors and are subject to and adhere to the requirements of federal laws, executive orders, and attendant rules and regulations, specifically Executive Order No. 11246, the Rehabilitation Act of 1973 and the Vietnam Era Veterans Readjustment Assistance Act of 1974, all as amended.

**Airgas eBusiness**

Now doing business with Airgas is easier than ever with our eBusiness website, **http:// www.airgas.com**. Visit us online today to see how **www.airgas.com** can save you time and money.

# STANDARD INVOICE

Airgas
an Air Liquide company

AIRGAS USA, LLC
PO Box 93500
Long Beach, CA 90809-3500

| INVOICE DATE | PAYER | INVOICE NO | DUE DATE | PAY THIS AMOUNT |
|---|---|---|---|---|
| 11/02/2017 | 1658108 | 9069483450 | 12/02/2017 | $ 203.29 |

**Manage Your Account Online**
Pay invoices, review order history, track shipping, and more!
**Go to: airgas.com/onlinebillpay**
We accept

SOLD BY AIRGAS USA, LLC (W051)
9010 CLAIREMONT MESA BLVD
SAN DIEGO CA 92123-1208
858-279-8200

13733 1 AB 0.403 T47 AADC920 PL2 S296

BILL TO LIT'L PEPPER GOURMET
8911 COMPLEX DR STE C
SAN DIEGO CA 92123-1412

013733
3

**PLEASE MAKE CHECKS PAYABLE AND REMIT TO:**

Airgas USA, LLC
PO BOX 7423
PASADENA CA 91109-7423

16581081906948345000000203296

TO ENSURE PROPER CREDIT, PLEASE RETURN THE UPPER PORTION WITH YOUR REMITTANCE. FOR QUESTIONS ON YOUR ACCOUNT PLEASE CALL: **800-224-7427**

| ORDER NO. | INVOICE NO. | INVOICE DATE | SOLD TO NO. | SOLD TO NAME |
|---|---|---|---|---|
| 1063429139 | 9069483450 | 11/02/2017 | 1658108 | LIT'L PEPPER GOURMET |

| PO / RELEASE | ORDERED BY | SHIP VIA | PAYMENT TERMS | ORDER DATE |
|---|---|---|---|---|
| | Hany 858-565-6552 | ARGTRK | NET 30 | 11/01/2017 |

| DELIVERY NO. / DESCRIPTION | MATERIAL NUMBER | QTY SHIP'D | UOM | QTY B/O | CYLINDER SHP'D | CYLINDER RET'D | UNIT PRICE | UOM | AMOUNT |
|---|---|---|---|---|---|---|---|---|---|
| 8069380752 | CD FG50 | 2 | CL | | 2 | 2 | 76.26 | CL | 152.52 N |
| CARBON DIOXIDE FG/IND 50LB (Vol: 100 LBS) | | | | | | | | | (H) |
| | | | | | | | Sale subtotal: | | 152.52 |
| Delivery Flat Fee | | | | | | | | | 25.12 |
| Fuel Surcharge Flat | | | | | | | | | 5.90 |
| Airgas Hazmat Charge | | | | | | | | | 19.75 |

Airgas Hazmat Charge (H) - see Itemized Charges on reverse or visit www.Airgas.com/terms-of-sale

PAID
CC
Cit 16005

| AMOUNT | 203.29 |
|---|---|

Airgas
an Air Liquide company

AIRGAS USA, LLC
PO Box 93500
Long Beach, CA 90809-3500

SHIP TO: 1658108
LIT'L PEPPER GOURMET
8911 COMPLEX DR STE C
SAN DIEGO CA 92123-1412

**FOR WIRE TRANSFER PAYMENTS**
Airgas USA, LLC
Acct No 8606074158
PNC Bank, ABA No 031000053

For change of address
email to: wdiv_adrss@airgas.com
or call 562-627-3279

REV 6.1.16 0018259

## CREDIT CARD BILLING

VISA ( ) MASTERCARD ( ) DISCOVER ( ) AMEX ( ) Exp. mm/yy____________

Card #______________________________________________

Print Name______________________________________________

Card Billing Address______________________________________________

Card Holder's Phone Number______________________________________________

Signature______________________________________________

If you are faxing this form please provide your Airgas acct # ____________ and Invoice # ______________ from the reverse side.

### Disclosure

Terms of Sale. Each sale of Goods or services by an Airgas™ company is and shall be governed by the terms and conditions on this Disclosure, the Terms of Sale affixed to the Account Application (if one has been completed), and the Terms of Sale found at http://www.airgas.com/terms-of-sale (collectively the "Terms of Sale"). Each Contract for the sale of Goods or services between Seller and Buyer ("Contract") shall include these Terms of Sale, together with any other material describing the Goods or services being sold, their price, delivery terms, and all other special provisions. "Goods" refers to any items of tangible personal property described in any Contract or otherwise provided by Seller to Buyer.

Notice Regarding Cylinder Rentals/Leases and Responsibility. This document shows the total number of cylinders charged to Buyer (i.e., cylinders which Seller has rented or leased to Buyer, and which Buyer has not returned) according to Seller's records as of the month ending date shown. The number of cylinders thus charged to Buyer shall be considered correct for all contractual purposes between Buyer and Seller, unless Buyer reports to Seller in writing any errors Buyer claims within 60 days after the date hereof. Buyer agrees to continue to pay rent on all cylinders charged to Buyer until Buyer has either (i) returned such cylinders to Seller in good working order or (ii) pays Seller the replacement cost thereof.

Refrigerant Cylinder Returns/Deposit. Refillable refrigerant cylinders shall remain the property of Airgas or its third party owners. Such cylinders shall not be used by Customer for purposes other than the storage of gas products purchased from Airgas or the return and reclamation of certain gases (e.g., refrigerants). Each refillable cylinder will be subject to a cylinder deposit fee, as established by Airgas from time to time. Airgas will refund the deposit fee when the Customer returns the refrigerant cylinder unless the cylinder's condition is deemed to be unfit for reuse, as determined by Airgas, which determination shall be irrefutable sixty days after the cylinder was returned.

Warranty. All products, other items of sale, cylinders and other containers furnished by an Airgas company shall conform to the description thereof published by the manufacturer at the time of sale and will meet Seller's purity specifications for all gas products. SELLER SPECIFICALLY DISCLAIMS ANY OTHER EXPRESS OR IMPLIED STANDARDS, GUARANTEES, OR WARRANTIES, INCLUDING ANY WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE OR NON-INFRINGEMENT AND ANY WARRANTIES THAT MAY BE ALLEGED TO ARISE AS A RESULT OF CUSTOM OR USAGE.

Limitation of Liability. SELLER SHALL BE LIABLE ONLY FOR THE REPAIR OR REPLACEMENT OF DEFECTIVE GAS CYLINDERS AND PRODUCTS, INCLUDING THE REPLACEMENT OF GASES THAT DO NOT MEET ITS PURITY SPECIFICATIONS WITH GASES THAT DO MEET SUCH SPECIFICATIONS. BUYER KNOWINGLY AND FULLY ASSUMES THE RISKS OF TRANSPORTING AND USING COMPRESSED GASES. SELLER SHALL NOT BE LIABLE FOR ANY DIRECT (EXCEPT AS EXPRESSLY PROVIDED HEREIN), INDIRECT, SPECIAL, INCIDENTAL, CONSEQUENTIAL AND/OR PUNITIVE DAMAGES, ARISING OR ALLEGED TO ARISE OUT OF OR IN CONNECTION WITH ITS PERFORMANCE OF ANY OBLIGATIONS ORANY PRODUCT, OTHER ITEMS OF SALE, OR EQUIPMENT SOLD OR LEASED BY SELLER, WHETHER SUCH DAMAGE RESULTS FROM ANY NEGLIGENT ACT OR OMISSION OR IS RELATED TO STRICT LIABILITY OR OTHERWISE.

Terms of Payment. Unless otherwise specified in a Contract, Buyer shall make payment in full within 30 days after the date of Seller's invoice. Continued open account credit is subject to Seller's assessment of Buyer's financial condition and ability to pay. A late payment charge of 1.5% on the unpaid, past due balance, will be assessed monthly (minimum two dollars ($2.00)), or the maximum lawful rate allowable in the state where the Goods are delivered, whichever is less.

Surcharges: Upon notice and receipt of underlying documentation, Buyer shall pay to Seller a surcharge in the event of any extraordinary or emergency increases in the cost of (a) power and/or raw materials used in the production of Products and/or (b) fuel.

Title to Equipment. Title to all rental equipment shall remain in Seller's name. Buyer shall not cover, modify, remove or otherwise disturb any identification or other indicia of Seller's ownership on any rental equipment.

Taxes. Any taxes imposed by federal, state, or other governmental authority on the sale, use or possession of Goods, or the sale or performance of services by an Airgas company, shall be paid by Buyer in addition to the purchase price.

Itemized Charges. (a) The total amount due from the Buyer may include various delivery charges, recurring charges for the handling of hazardous materials and for compliance with laws and requirements concerning hazardous materials, charges for handling, delivery and shipping, and surcharges for energy or fuel. None of the charges represent a tax or fee paid to or imposed by any government authority, and all of the charges are retained by the Seller. The Seller does not specifically quantify the relationship between the charges and the actual costs associated with the charges, which can vary by product, service, time and place, among other things. (b) No such charges not already provided for in a Contract will be imposed without mutual consent.

Government Contracts. Certain Airgas companies are U.S. government contractors and sub-contractors and are subject to and adhere to the requirements of federal laws, executive orders, and attendant rules and regulations, specifically Executive Order No. 11246, the Rehabilitation Act of 1973, and the Vietnam Era Veterans' Readjustment Assistance Act of 1974, all as amended.

### Airgas eBusiness

Now doing business with Airgas is easier than ever with our eBusiness website, http:// www.airgas.com. Visit us online today to see how www.airgas.com can save you time and money.

TO ENSURE PROPER CREDIT, PLEASE RETURN THE UPPER PORTION WITH YOUR REMITTANCE. FOR QUESTIONS ON YOUR ACCOUNT PLEASE CALL 800-224-7427

| ORDER NO. | INVOICE NO. | INVOICE DATE | SOLD TO NO. | SOLD TO NAME |
|---|---|---|---|---|
| 1068704147 | 9075660591 | 05/02/2018 | 1658108 | LIT'L PEPPER GOURMET |

| PO / RELEASE | ORDERED BY | SHIP VIA | PAYMENT TERMS | ORDER DATE |
|---|---|---|---|---|
| | Yasmin 619-277-8259 | ARGTRK | NET 30 | 05/01/2018 |

| DELIVERY NO. / DESCRIPTION | MATERIAL NUMBER | QTY SHIP'D | UOM | QTY B/O | CYLINDER SHP'D | CYLINDER RET'D | UNIT PRICE | UOM | AMOUNT |
|---|---|---|---|---|---|---|---|---|---|
| 8075211753 | CD FG50 | 2 | CL | | 2 | 2 | 77.02 | CL | 154.04 N |
| CARBON DIOXIDE FG/IND 50LB (Vol: 50 LBS) | | | | | | | | | (H) |
| | | | | | | | Sale subtotal: | | 154.04 |
| Delivery Flat Fee | | | | | | | | | 27.75 |
| Fuel Surcharge Flat | | | | | | | | | 10.30 |
| Airgas Hazmat Charge | | | | | | | | | 21.70 |

Airgas Hazmat Charge (H) - see Itemized Charges on reverse or visit www.Airgas.com/terms-of-sale

| AMOUNT | 213.79 |
|---|---|

Airgas
an Air Liquide company

AIRGAS USA, LLC
PO Box 93500
Long Beach, CA 90809-3500

SHIP TO: 1658108
LIT'L PEPPER GOURMET
8911 COMPLEX DR STE C
SAN DIEGO CA 92123-1412

FOR WIRE TRANSFER PAYMENTS
Airgas USA, LLC
Acct No 8606074158
PNC Bank, ABA No 031000053

For change of address
email to: wdiv_adrss@airgas.com
or call 562-627-3279

REV 6.1.16 0019354

Page 1 of 1

Terms of Sale: Each sale of Goods or services by an Airgas™ company is and shall be governed by the terms and conditions on this Disclosure, the Terms of Sale affixed to the Account Application (if one has been completed), and the Terms of Sale found at http://www.airgas.com/terms-of-sale (collectively the "Terms of Sale"). Each Contract for the sale of Goods or services between Seller and Buyer ("Contract") shall include these Terms of Sale, together with any other material describing the Goods or services being sold, their price, delivery terms, and all other special provisions. "Goods" refers to any items of tangible personal property described in any Contract or otherwise provided by Seller to Buyer.

Notice Regarding Cylinder Rentals/Leases and Responsibility. This document shows the total number of cylinders charged to Buyer (i.e., cylinders which Seller has rented or leased to Buyer, and which Buyer has not returned) according to Seller's records as of the month ending date shown. The number of cylinders thus charged to Buyer shall be considered correct for all contractual purposes between Buyer and Seller, unless Buyer reports to Seller in writing any errors Buyer claims within 60 days after the date hereof. Buyer agrees to continue to pay rent on all cylinders charged to Buyer until Buyer has either (i) returned such cylinders to Seller in good working order or (ii) pays Seller the replacement cost thereof.

Refrigerant Cylinder Returns/Deposit. Refillable refrigerant cylinders shall remain the property of Airgas or its third-party vendors. Such cylinders shall not be used by Customer for purposes other than the storage of gas products purchased from Airgas or the return and reclamation of certain gases (e.g., refrigerants). Each refillable cylinder will be subject to a cylinder deposit fee, as established by Airgas from time to time. Airgas will refund the deposit fee when the Customer returns the refrigerant cylinder unless the cylinder's condition is deemed to be unfit for reuse, as determined by Airgas, which determination shall be irrefutable sixty days after the cylinder was returned.

Warranty. All products, other items of sale, cylinders and other containers furnished by an Airgas company shall conform to the description thereof published by the manufacturer at the time of sale and will meet Seller's purity specifications for all gas products. **SELLER SPECIFICALLY DISCLAIMS ANY OTHER EXPRESS OR IMPLIED STANDARDS, GUARANTEES, OR WARRANTIES, INCLUDING ANY WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE OR NON-INFRINGEMENT AND ANY WARRANTIES THAT MAY BE ALLEGED TO ARISE AS A RESULT OF CUSTOM OR USAGE.**

Limitation of Liability: **SELLER SHALL BE LIABLE ONLY FOR THE REPAIR OR REPLACEMENT OF DEFECTIVE GAS CYLINDERS AND PRODUCTS, INCLUDING THE REPLACEMENT OF GASES THAT DO NOT MEET ITS PURITY SPECIFICATIONS WITH GASES THAT DO MEET SUCH SPECIFICATIONS. BUYER KNOWINGLY AND FULLY ASSUMES THE RISKS OF TRANSPORTING AND USING COMPRESSED GASES. SELLER SHALL NOT BE LIABLE FOR ANY DIRECT (EXCEPT AS EXPRESSLY PROVIDED HEREIN), INDIRECT, SPECIAL, INCIDENTAL, CONSEQUENTIAL AND/OR PUNITIVE DAMAGES, ARISING OR ALLEGED TO ARISE OUT OF OR IN CONNECTION WITH ITS PERFORMANCE OF ANY OBLIGATIONS ORANY PRODUCT, OTHER ITEMS OF SALE, OR EQUIPMENT SOLD OR LEASED BY SELLER, WHETHER SUCH DAMAGE RESULTS FROM ANY NEGLIGENT ACT OR OMISSION OR IS RELATED TO STRICT LIABILITY, OR OTHERWISE.**

Terms of Payment. Unless otherwise specified in a Contract, Buyer shall make payment in full within 30 days after the date of Seller's invoice. Continued open account credit is subject to Seller's assessment of Buyer's financial condition and ability to pay. A late payment charge of 1.5% on the unpaid, past due balance, will be assessed monthly (minimum two dollars ($2.00)), or the maximum lawful rate allowable in the state where the Goods are delivered, whichever is less.

Surcharges. Upon notice and receipt of underlying documentation, Buyer shall pay to Seller a surcharge in the event of any extraordinary or emergency increases in the cost of (a) power and/or raw materials used in the production of Products and/or (b) fuel.

Title to Equipment. Title to all rental equipment shall remain in Seller's name. Buyer shall not cover, modify, remove or otherwise disturb any identification or other indicia of Seller's ownership on any rental equipment.

Taxes. Any taxes imposed by federal, state, or other governmental authority on the sale, use or possession of Goods, or the sale or performance of services by an Airgas company, shall be paid by Buyer in addition to the purchase price.

Itemized Charges. (a) The total amount due from the Buyer may include various itemized charges, including charges for the handling of hazardous materials and for compliance with laws and regulations concerning hazardous materials, charges for handling, delivery and shipping, and/or charges for energy or fuel. None of the charges represent a tax or fee paid to or imposed by any government authority, and all of the charges are retained by the Seller. The Seller has not specifically quantified the relationship between the charges and the actual costs associated with the charges, which can vary by product, service, time and place, among other things. (b) No such charges not already provided for in a Rider will be imposed without mutual consent.

Government Contracts. Certain Airgas companies are U.S. government contractors and subcontractors and are subject to and adhere to the requirements of federal laws, executive orders, and attendant rules and regulations, specifically Executive Order No. 11246, the Rehabilitation Act of 1973 and the Vietnam Era Veterans Readjustment Assistance Act of 1974, all as amended.

**Airgas eBusiness**

Now doing business with Airgas is easier than ever with our eBusiness website, **http:// www.airgas.com**. Visit us online today to see how **www.airgas.com** can save you time and money.

TO ENSURE PROPER CREDIT, PLEASE RETURN THE UPPER PORTION WITH YOUR REMITTANCE. FOR QUESTIONS ON YOUR ACCOUNT PLEASE CALL: 800-224-7427

| ORDER NO. | INVOICE NO. | INVOICE DATE | SOLD TO NO. | SOLD TO NAME |
|---|---|---|---|---|
| 1073125830 | 9080936706 | 10/01/2018 | 1658108 | LIT'L PEPPER GOURMET |

| PO / RELEASE | ORDERED BY | SHIP VIA | PAYMENT TERMS | ORDER DATE |
|---|---|---|---|---|
| | | ARGTRK | NET 30 | 09/28/2018 |

| DELIVERY NO. / DESCRIPTION | MATERIAL NUMBER | QTY SHIP'D | UOM | QTY B/O | CYLINDER SHP'D | CYLINDER RET'D | UNIT PRICE | UOM | AMOUNT |
|---|---|---|---|---|---|---|---|---|---|
| P080116030 | CD FG50 | 2 | CL | | 2 | 2 | 77.02 | CL | 154.04 N |
| CARBON DIOXIDE FG/IND 50LB (Vol: 100 LBS) | | | | | | | | | (H) |
| | Cyl Maintenance Fee | | | | | | | | 4.50 |
| | | | | | | | Sale subtotal: | | 158.54 |
| | Delivery Flat Fee | | | | | | | | 27.75 |
| | Fuel Surcharge Flat | | | | | | | | 10.10 |
| | Airgas Hazmat Charge | | | | | | | | 21.70 |

Airgas Hazmat Charge (H) - see Itemized Charges on reverse or visit www.Airgas.com/terms-of-sale

| AMOUNT | 218.09 |
|---|---|

Airgas
an Air Liquide company

AIRGAS USA, LLC
PO Box 93500
Long Beach, CA 90809-3500

SHIP TO: 1658108
LIT'L PEPPER GOURMET
8911 COMPLEX DR STE C
SAN DIEGO CA 92123-1412

FOR WIRE TRANSFER PAYMENTS
Airgas USA, LLC
Acct No 8606074158
PNC Bank, ABA No 031000053

For change of address
email to: wdiv_adrss@airgas.com
or call 562-627-3279

013743
REV 6.1.16
0017865

Page 1 of 1

Terms of Sale: Each sale of Goods or services by an Airgas™ company is and shall be governed by the terms and conditions on this Disclosure, the Terms of Sale attached to the Account Application (if one has been completed), and the Terms of Sale found at http://www.airgas.com/terms-of-sale (collectively the "Terms of Sale"). Each Contract for the sale of Goods or services between Seller and Buyer ("Contract") shall include these Terms of Sale, together with any other material describing the Goods or services being sold, their price, delivery terms, and all other special provisions. "Goods" refers to any items of tangible personal property described in any Contract or otherwise provided by Seller to Buyer.

Notice Regarding Cylinder Rentals/Leases and Responsibility: This document shows the total number of cylinders charged to Buyer (i.e., cylinders which Seller has rented or leased to Buyer, and which Buyer has not returned) according to Seller's records as of the month ending date shown. The number of cylinders thus charged to Buyer shall be considered correct for all contractual purposes between Buyer and Seller, unless Buyer reports to Seller in writing any errors Buyer claims within 60 days after the date hereof. Buyer agrees to continue to pay rent on all cylinders charged to Buyer until Buyer has either (i) returned such cylinders to Seller in good working order or (ii) pays Seller the replacement cost thereof.

Refrigerant Cylinder Returns/Deposit: Refillable refrigerant cylinders shall remain the property of Airgas or its third-party vendors. Such cylinders shall not be used by Customer for purposes other than the storage of gas products purchased from Airgas or the return and reclamation of certain gases (e.g., refrigerants). Each refillable cylinder will be subject to a cylinder deposit fee, as established by Airgas from time to time. Airgas will refund the deposit fee when the Customer returns the refrigerant cylinder unless the cylinder's condition is deemed to be unfit for reuse, as determined by Airgas, which determination shall be irrefutable sixty days after the cylinder was returned.

Warranty: All products, other items of sale, cylinders and other containers furnished by an Airgas company, shall conform to the description thereof published by the manufacturer at the time of sale and will meet Seller's purity specifications for all gas products. SELLER SPECIFICALLY DISCLAIMS ANY OTHER EXPRESS OR IMPLIED STANDARDS, GUARANTEES, OR WARRANTIES, INCLUDING ANY WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE OR NON-INFRINGEMENT AND ANY WARRANTIES THAT MAY BE ALLEGED TO ARISE AS A RESULT OF CUSTOM OR USAGE.

Limitation of Liability: SELLER SHALL BE LIABLE ONLY FOR THE REPAIR OR REPLACEMENT OF DEFECTIVE GAS CYLINDERS AND PRODUCTS, INCLUDING THE REPLACEMENT OF GASES THAT DO NOT MEET ITS PURITY SPECIFICATIONS WITH GASES THAT DO MEET SUCH SPECIFICATIONS. BUYER KNOWINGLY AND FULLY ASSUMES THE RISKS OF TRANSPORTING AND USING COMPRESSED GASES. SELLER SHALL NOT BE LIABLE FOR ANY DIRECT (EXCEPT AS EXPRESSLY PROVIDED HEREIN), INDIRECT, SPECIAL, INCIDENTAL, CONSEQUENTIAL AND/OR PUNITIVE DAMAGES, ARISING OR ALLEGED TO ARISE OUT OF OR IN CONNECTION WITH ITS PERFORMANCE OF ANY OBLIGATIONS OR ANY PRODUCT, OTHER ITEMS OF SALE, OR EQUIPMENT SOLD OR LEASED BY SELLER, WHETHER SUCH DAMAGE RESULTS FROM ANY NEGLIGENT ACT OR OMISSION OR IS RELATED TO STRICT LIABILITY, OR OTHERWISE.

Terms of Payment: Unless otherwise specified in a Contract, Buyer shall make payment in full within 30 days after the date of Seller's invoice. Continued open-account credit is subject to Seller's assessment of Buyer's financial condition and ability to pay. A late payment charge of 1.5% on the unpaid, past due balance, will be assessed monthly (minimum two dollars ($2.00)), or the maximum lawful rate allowable in the state where the Goods are delivered, whichever is less.

Surcharges: Upon notice and receipt of underlying documentation, Buyer shall pay to Seller a surcharge in the event of any extraordinary or emergency increases in the cost of (a) power and/or raw materials used in the production of Products and/or (b) fuel.

Title to Equipment: Title to all rental equipment shall remain in Seller's name. Buyer shall not cover, modify, remove or otherwise disturb any identification or other indicia of Seller's ownership on any rental equipment.

Taxes: Any taxes imposed by federal, state, or other governmental authority on the sale, use or possession of Goods, or the sale or performance of services by an Airgas company, shall be paid by Buyer in addition to the purchase price.

Itemized Charges: (a) The total amount due from the Buyer may include various itemized charges, including charges for the handling of hazardous materials and for compliance with laws and regulations concerning hazardous materials; charges for handling, delivery and shipping; and/or charges for energy or fuel. None of the charges represent a tax or fee paid to or imposed by any government authority, and all of the charges are retained by the Seller. The Seller has not specifically quantified the relationship between the charges and the actual costs associated with the charges, which can vary by product, service, time and place, among other things. (b) No such charges not already provided for in a Rider will be imposed without mutual consent.

Government Contracts: Certain Airgas companies are U.S. government contractors and subcontractors and are subject to and adhere to the requirements of federal laws, executive orders, and attendant rules and regulations, specifically Executive Order No. 11246, the Rehabilitation Act of 1973 and the Vietnam Era Veterans Readjustment Assistance Act of 1974, all as amended.

Airgas eBusiness

Now doing business with Airgas is easier than ever with our eBusiness website, http:// www.airgas.com . Visit us online today to see how www.airgas.com can save you time and money.