# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LIT'L PEPPER GOURMET, INC., <br>                            Plaintiff, <br> vs. <br> AIRGAS USA, LLC, <br>                            Defendant. | CASE NO. 19cv837-LAB (AGS) <br><br> **ORDER GRANTING DEFENDANT'S MOTION TO DISMISS [Dkt. 16]** |

Currently before the Court is Defendant Airgas USA's Motion to Dismiss. Dkt. 16. For the reasons below, that motion is **GRANTED**.

## BACKGROUND

Defendant Airgas USA, LLC ("Airgas") is a Delaware corporation, headquartered in Pennsylvania, that manufactures and distributes commercial gas cannisters nationwide. First Am. Compl. ("FAC") at ¶¶ 8-9. For at least the past four years, Airgas has charged its customers, including Plaintiff Lit'l Pepper Gourmet, Inc. ("Lit'l Pepper"), a "Fuel Surcharge," which it lists on every invoice and delivery receipt. *Id.* at ¶¶ 16, 21. Lit'l Pepper filed this complaint on behalf of itself and all other California Airgas customers, alleging that Airgas's decision to impose these fuel surcharges constitutes breach of contract and a violation of various California consumer protection laws. Lit'l Pepper claims that the fuel surcharges bear no relation to Airgas's actual fuel costs and are not used to offset an increase in the cost of fuels. Instead, according to Lit'l Pepper, the fuel surcharges are simply a hidden rate increase designed to generate profit. Airgas now

moves to dismiss, arguing that the terms of sale found on its website permit it to impose these fuel surcharges.

**ANALYSIS**

**A.  Legal Standard**

A Rule 12(b)(6) motion tests the sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). While a plaintiff need not give "detailed factual allegations," a plaintiff must plead sufficient facts that, if true, "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 547). A claim is facially plausible when the factual allegations permit "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Court need not accept legal conclusions couched as factual allegations. *See Twombly*, 550 U.S. at 555.

**B.  Threshold Issue: Which Set of Terms Controls?**

Before analyzing the sufficiency of Plaintiff's complaint, the Court must first determine which set of contractual terms governs the party's relationship when the terms conflict. The key dispute in this case concerns a provision in the website's terms of sale that allows Airgas to impose a fuel surcharge not only if the company encounters extraordinary or emergency circumstances, but also in the face of "unanticipated increases in the cost of manufacturing, supplying or distributing." The corresponding provision on the invoices contains no such carve out, but instead permits the company to impose a fuel surcharge *only* in extraordinary or emergency circumstances. Naturally, Plaintiff claims that the terms on the invoices control, while Airgas maintains that the terms on its website supersede those on the invoices. As relevant here, the language on the invoices provided:

> **Terms of Sale**. Each sale of Goods or services . . . is and shall be governed by the terms and conditions on this Disclosure, the Terms of Sale affixed to

the Account Application (if one has been completed), and the Terms of Sale found at http://www.airgas.com/terms-of-sale (collectively the "Terms of Sale").

**Surcharges**. Upon notice and receipt of underlying documentation, Buyer shall pay to Seller a surcharge in the event of any extraordinary or emergency increases in the cost of (a) power and/or raw materials used in the production of Products and/or (b) fuel.

FAC, Ex. A at 9. The language on the delivery orders—which were signed by a Lit'l Pepper representative at the time Lit'l Pepper accepted a delivery from Airgas—contained no information about surcharges but similarly directed customers to Airgas's website for the full terms governing the transaction:

**AIRGAS TERMS AND CONDITIONS OF SALE**. Each sale of Products by Airgas USA, LLC, or one of its affiliates ("Seller"), shall be governed by the terms and condition below and the terms of sale found at http://www.airgas.com/terms-of-sale (collectively, the "Terms"). If you do not have access to the internet, you may request a copy of the terms of sale from your Airgas customer service representative.

*Id.* at 6. Finally, the online terms provide, in relevant part:

**TERMS OF SALE.** Except as provided in a separate written agreement, such as a Product Sales Agreement, negotiated by the parties and executed by authorized representatives of Seller and Buyer, each sale of Products or Services shall be governed by these Terms and Conditions of Sale ("Terms"). . . . Seller's acceptance of any order is expressly subject to Buyer's assent to each and all of the terms and conditions set forth herein. These Terms represent the entire agreement with respect to the sale or rental of Products and Services and, except as provided in a separate written agreement as set forth above, supersede all prior or contemporaneous written/oral communications between the parties and information in any Seller literature, website or catalog, and override and exclude any other terms and conditions stipulated, incorporated or referred to by Buyer, including without limitation any Buyer purchase order, and any prior course of dealing between the parties.

. . .

**ITEMIZED CHARGES**. The total amount due from Buyer may include various itemized charges, including: charges for the handling of hazardous materials and for compliance with laws and regulations concerning hazardous materials; charges for handling, delivery, and shipping; and/or charges for energy or fuel. None of the charges represents a tax or fee paid

> to or imposed by any governmental authority and all of the charges are retained by Seller. Seller has not specifically quantified the relationship between the charges and the actual costs associated with the charges, which can vary by product, service, time and place, among other things. www.airgas.com/terms-of-sale.
>
> . . .
>
> **SURCHARGES.** Following notice from Seller, Buyer shall pay to Seller a surcharge in the event of any extraordinary, emergency *or other unanticipated increases in the cost of manufacturing, supplying or distributing Product hereunder*.

www.airgas.com/terms-of-sale (emphasis added in italics).

Given that both the invoices and delivery orders specifically directed customers to the terms of sale on its website, Airgas maintains that the website's terms are incorporated by reference and control when the two sets of terms conflict.

A contract can incorporate another document by reference if it "is clear and unequivocal, the reference is called to the attention of the other party and he consents thereto, and the terms of the incorporated document are known or easily available to the contracting parties." *In re Holl*, 925 F.3d 1076, 1084 (9th Cir. 2019) (quoting *Shaw v. Regents of Univ. of Cal.,* 58 Cal. App. 4th 44, 54 (1997)). Under this standard, the website's terms of sale are properly incorporated by reference here. The website's terms of sale are clearly and repeatedly referenced on both the invoices and the delivery orders, and Lit'l Pepper was able to easily access the website's terms during the parties' four-year commercial relationship. *See Marin Storage & Trucking, Inc. v. Benco Contracting & Eng'g, Inc.*, 89 Cal. App. 4th 1042, 1050 (2001) (finding terms on the reverse side of a contract incorporated where "[o]ver the course of their lengthy history of doing business together prior to the accident, the parties had used the form many times, and [the contractor] had ample opportunity to examine the back of the form, even though [the contractor]'s president apparently failed to do so.").

Lit'l Pepper argues that the differences in the language between the invoices and online terms creates an ambiguity that must be "resolved against the drafter." *Victoria v.*

*Superior Court*, 40 Cal. 3d 734, 738 (1985). An ambiguous term is "susceptible to more than one reasonable interpretation[,]" which suggests that no meeting of the minds occurred. *Local Motion, Inc. v. Niescher*, 105 F.3d 1278, 1280 (9th Cir. 1997). Here, the terms are inconsistent, but they are not ambiguous. The website terms, for example, are perfectly clear that they "supersede all prior or contemporaneous written/oral communications between the parties." A reasonable party reading those terms would understand that the complete terms on the website governed the relationship and that any terms included on the invoice were intended only as non-exhaustive summaries.

*Slaught v. Bencomo Roofing Company*, 25 Cal. App. 4th 744, 750-51 (1994) is instructive on this point. In that case, the defendant-contractor entered into a subcontract that incorporated by reference a broader "Construction Contract." The arbitration provision in that broader Construction Contract conflicted with the arbitration provision in the subcontract, and the plaintiff-subcontractors argued that this led to an "obvious ambiguity" that should be resolved in their favor. The California Court of Appeals disagreed, finding that "due to incorporation of the Construction Contract . . ., the arbitration procedures specified in the general [Construction C]ontract controlled." *Id.* The same is true here. There is no obvious ambiguity in language; there is only an inconsistency in terms. Where that's the case, the more exhaustive, incorporated document—in this case, the one found on the website that explicitly superseded all other agreements—controls. For purposes of this opinion, the Court will treat the terms on Airgas's website as governing the parties' relationship.

    **C.**     **Breach of Contract**

The primary allegation underlying Plaintiff's complaint is that Airgas's imposition of a fuel surcharge constitutes breach of contract. Specifically, Lit'l Pepper alleges that the terms found on the parties' invoices permitted Airgas to impose a fuel surcharge only when there were "extraordinary or emergency increases in fuel costs." In Plaintiff's view, there were no such extraordinary circumstances and Airgas's decision to impose a fuel

surcharge therefore breached both the explicit terms of the agreement and the covenant of good faith and fair dealing.

Lit'l Pepper's claim is belied by the terms of the parties' agreement. Under the terms of sale set out on Airgas's website, which the Court has determined control here, Airgas was permitted to impose a fuel surcharge "in the event of any extraordinary, emergency, *or other unanticipated increases in the cost of manufacturing, supplying or distributing Product hereunder.*" Airgas Terms of Sale, www.airgas.com/terms-of-sale, ¶ 7 (emphasis added). Although Plaintiff's complaint alleges that there were no extraordinary or emergency circumstances, it doesn't account for the possibility that any surcharge increases were the result of unanticipated cost increases. Indeed, Plaintiff concedes in its complaint that the price of fuel in California "increased by approximately 25 percent" from April 28, 2015 to October 1, 2018, which suggests that there were in fact unanticipated increases in the costs of providing the product. FAC at ¶ 22. The increase in the fuel surcharge—130% over the same period—may have outstripped the increase in the price of fuel, but there is no requirement in the contract that the fuel surcharge precisely track the cost of fuel.[1] As pled, Lit'l Pepper has not stated a valid claim for breach of contract.

Lit'l Pepper's related claim for breach of the covenant of good faith and fair dealing fails because "the covenant . . . cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement." *Guz v. Bechtel Nat. Inc.*, 24 Cal. 4th 317, 349-50 (Cal. 2000).

/ / /

---

[1] In fact, there's no reason to think the two percentages are necessarily linked to one another at all. If a fuel surcharge starts out close to zero, even a modest increase—say from 10¢ to $1—will result in a large percentage increase—in this example, 1000%. But that additional revenue might not be sufficient to cover a 50% increase in the cost of fuel from, say, $40 per barrel to $60 per barrel. In other words, it's not apparent there is a close relationship between an increased fuel surcharge and increased fuel prices, at least in percentage terms.

**D. Unlawful, Unfair, and Fraudulent Business Practices**

Lit'l Pepper next argues that Airgas's imposition of a fuel surcharge constitutes an unlawful, unfair, and/or fraudulent business practice in violation of California Business and Professions Code Section 17200, *et seq.*, commonly known as "the UCL."

  *A. Unlawful*

"Under its 'unlawful' prong, 'the UCL borrows violations of other laws . . . and makes those unlawful practices actionable under the UCL.'" *Berryman v. Merit Prop. Mgmt., Inc.*, 152 Cal. App. 4th 1544, 1554 (2007). To properly plead an unlawful claim under the UCL, a plaintiff must plausibly allege a violation of some other predicate law. *See Pellerin v. Honeywell Int'l, Inc.*, 877 F. Supp. 2d 983, 992 (S.D. Cal. 2012) ("A UCL claim must be dismissed if the plaintiff has not stated a claim for the predicate acts upon which he bases the claim.").

Lit'l Pepper's complaint sets forth a laundry list of predicate statutes that Airgas supposedly violated by imposing a fuel surcharge, including, among others, California Civil Code Sections 1572 (actual fraud), 1573 (constructive fraud), 1709 (fraudulent deceit), 1711 (deceit upon the public), and 1670.5 (unconscionable contracts). But Lit'l Pepper makes no serious effort to plead a violation of any of these predicate statutes. It doesn't plead the specific elements of the statutes, nor does it plead any factual support for its allegations other than that Airgas imposed a fuel surcharge. Because Lit'l Pepper did not "take care to specifically plead the elements of the predicate, unlawful California Civil Code violations," it has not stated a plausible claim under the UCL's unlawful prong. *Eckler v. Wal-Mart Stores, Inc.*, 2012 WL 5382218, at *5 (S.D. Cal. 2012).

  *B. Unfair*

Lit'l Pepper next alleges that Airgas's decision to impose a fuel surcharge, even if not unlawful, was an "unfair" business practice in violation of the UCL. An unfair business practice is one that "offends an established public policy or . . . is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Smith v. State Farm Mut. Auto. Ins. Co.*, 93 Cal. App. 4th 700, 719 (2001), *as modified* (Nov. 20, 2001).

Plaintiff does not explain how specifically Airgas's actions were unfair, except that the decision to impose a fuel surcharge amounted to a "systematic breach" of the parties' agreement. As discussed above, Lit'l Pepper has not plausibly alleged *any* breach of the parties' agreement, so this argument doesn't hold water here.

But even putting aside the "systematic breach" argument, federal courts in California have regularly rejected claims that surcharges—even those disproportionate to the seller's underlying costs—constitute unfair competition. In *Graham v. VCA Antech*, 2016 WL 5958252 (C.D. Cal. 2016), for example, the plaintiff alleged that defendants' "Biohazard Waste Management" fee was unfair because it was an "illegal profit enhancer" that bore no rational relationship to the defendants' actual waste-disposal costs. *Id.*, at *3. The court disagreed, finding that the imposition of the fee was not unfair even if the "overall revenue that was generated for 'waste management' surpassed [defendants'] ultimate expenses associated with waste disposal." *Id.*, at *9. The court found it important that the seller "disclosed the [fee] on plaintiff's invoices" and "plaintiffs willfully paid the full amount of the [fee]."[2] *Id.*, at *10. The same is true here. Airgas's invoices and delivery orders disclosed the existence and the amount of the fuel surcharge, and Lit'l Pepper regularly paid these surcharges for years. The UCL does not provide courts with "a general license to assess the fairness of contracts," *Samura v. Kaiser Found. Health Plan, Inc.*, 17 Cal. App. 4th 1284, 1299 n.6 (1993), and Plaintiff has identified no authority that requires a for-profit business to identify the specific statute or contract that permits it to charge a fee for a service. Instead, the burden is on Lit'l Pepper to show that the fee was impermissible. It hasn't met that burden here.

   C.  Fraudulent

Lit'l Pepper's last UCL claim is that Airgas's decision to impose a fuel surcharge constituted a fraudulent business practice. To show that a business practice is fraudulent,

---

[2] Relatedly, Airgas argues that all of Lit'l Pepper's claims are barred under the so-called "voluntary payment doctrine." Except as relevant here, the Court doesn't address this argument.

a plaintiff must demonstrate that "members of the public are likely to be deceived." *Brown v. Starbucks Corp.*, 2019 WL 996399, at *2 (S.D. Cal. 2019). Here, because Lit'l Pepper hasn't plausibly alleged that Airgas exceeded its authority under the contract in imposing the fuel surcharge, it also hasn't plausibly alleged that the public would be deceived by Airgas's actions. *See Chaiwong v. Hanlees Fremont, Inc.*, 2018 WL 4677600, at *5 (N.D. Cal. 2018) (dismissing plaintiff's claim under the fraudulent prong of the UCL failed where "the lease agreement explicitly states that [defendant's] customers may be charged for excess wear or mileage at lease end.").

### E. False and Misleading Statements

Plaintiff's last claim is that Airgas's terms and conditions violated California Business and Professions Code § 17500, also known as California's False Advertising Law. California's False Advertising Law "prohibits any 'unfair, deceptive, untrue, or misleading advertising.'" *Williams v. Gerber Prod. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (quoting Cal. Bus. & Prof. Code § 17500). To state a claim for violation of this law, a plaintiff must allege that there was an advertisement that was directed at the public and that it was unfair, deceptive, untrue, or misleading. *See id.*; *see also VP Racing Fuels, Inc. v. Gen. Petroleum Corp.*, 673 F. Supp. 2d 1073, 1088 (E.D. Cal. 2009) ("The underlying element of a false advertising claim is some type of advertising statement.").

Lit'l Pepper has not plausibly alleged a violation of California's False Advertising Law because it has neither shown that Airgas's terms and conditions were advertisements directed at the public nor that the terms were untrue or deceptive. Although the definition of "advertising" in section 17500 is expansive and includes "any [ ] manner or means whatsoever, . . . [the statute] as a whole clearly refers to advertising," not to contracts. *Otashe Golden, M.D. v. Sound Inpatient Physicians Med. Grp., Inc.*, 2015 WL 8539034, at *5 (E.D. Cal. 2015). Lit'l Pepper has identified no authority holding that a contract between parties constitutes "advertising," and the Court declines to adopt such a broad reading. *See id.* ("Finding for Plaintiff on this point would mean that nearly

any false statement connected with the sale of a product/service constitutes false advertising.").

Further, even if the Court were to construe Airgas's terms of service as an advertisement, for the reasons discussed above, Lit'l Pepper has not plausibly pled that there was anything false, unfair, or deceptive about them.

F.  CLASS ACTION WAIVER

The final piece of this puzzle is the class action waiver in Airgas's terms. The waiver, which is found in the online terms but not the physical invoices,[3] provides:

> **GOVERNING LAW; CLASS ACTION AND TRIAL BY JURY WAIVER.** These Terms shall be governed by and construed in accordance with the substantive law of the State of Delaware, without regard to its conflict of laws principles. . . . Any claim must be brought in the respective party's individual capacity, and not as a plaintiff or a class member in any purported class, collective, representative, multiple plaintiff, or similar proceeding ("Class Action"). The parties expressly waive any ability to maintain any Class Action in any forum. *Id.*

Airgas Terms of Sale, *www.airgas.com/terms-of-sale*, at ¶ 25.  Airgas argues that the unambiguous language of this provision means that Lit'l Pepper must pursue this litigation individually and not on behalf of other customers.  Lit'l Pepper does not dispute the language of the provision, but instead maintains that California law controls and that the provision is substantively unconscionable—and therefore unenforceable—under the California Supreme Court's decision in *Discover Bank v. Superior Court*, 113 Cal.4th 148 (Cal. 2005) *abrogated on other grounds by AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011).

Although the parties disagree about whether California or Delaware law governs the class action waiver, it's not necessary to reach that question here because the waiver is valid even under the more stringent California standard.  In *Discover Bank*, the

---

[3] For the same reasons discussed earlier, the Court finds that the class action waiver was properly incorporated by reference into the parties' contract.

- 10 -

California Supreme Court held that a class action waiver is substantively unconscionable when "the waiver is found in a consumer contract of adhesion in a setting in which disputes between the contracting parties predictably involve small amounts of damages, and when it is alleged that the party with the superior bargaining power has carried out a scheme to deliberately cheat large numbers of consumers out of individually small sums of money." *Discover Bank*, 113 Cal. 4th at 162-63. Lit'l Pepper has failed to plausibly allege that Airgas "carried out a scheme to deliberately cheat large numbers of consumers out of the individual small sums of money." *Id.* The Terms of the parties' agreement expressly authorized Airgas to levy a fuel surcharge, and Lit'l Pepper cannot plausibly allege that Airgas's decision to impose an authorized surcharge constitutes "a scheme to deliberately cheat its customers." Lit'l Pepper's request for declaratory relief is dismissed.

## CONCLUSION

Defendant's motion to dismiss is **GRANTED**. Dkt. 16. Lit'l Pepper's First Cause of Action for Violation of California's False Advertising Law, Cal. Bus. & Prof. Code § 17500, is **DISMISSED WITH PREJUDICE** because Plaintiff has not (and cannot) show that the parties' contract constituted advertising as a matter of law. Lit'l Pepper's remaining claims, including the class allegations, are **DISMISSED WITHOUT PREJUDICE**. Lit'l Pepper may amend, but only if it can show that Airgas's decision to impose a fuel surcharge was done in the face of known or anticipated fuel increases, and only if it can make that showing on more than a "speculative level." *Twombly*, 550 U.S. at 545. As discussed above, the fact that the fuel surcharge increased faster than the price of fuel is not alone sufficient to state a plausible claim. If Lit'l Pepper elects to amend, it must do so no later than **January 13, 2020**.

**IT IS SO ORDERED**.

Dated: November 21, 2019

_Larry A. Burns_
**HONORABLE LARRY ALAN BURNS**
Chief United States District Judge