John K. Landay, Esq. (257573)
  jlanday@landayroberts.com
**LANDAY ROBERTS LLP**
101 West Broadway, Suite 300
San Diego, CA 92101
Telephone: (619) 230-5712

Michael A. Licari, Esq. (265241)
  mike@SL2Law.com
**SPRINKLE LLOYD & LICARI LLP**
2801 B Street, Suite 556
San Diego, CA 92102
Telephone: (858) 717-0013

Attorney for Plaintiff

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LIT'L PEPPER GOURMET, INC., individually and on behalf of those similarly situated<br><br><div align=center>Plaintiff,</div><br>v.<br><br>AIRGAS USA, LLC<br><div align=center>Defendant.</div> | Case No. 3:19-CV-00837<br><br>Hon. Larry Alan Burns<br><br>Courtroom 14A<br><br>**SECOND AMENDED COMPLAINT**<br><br>CLASS ACTION<br><br>1. Unlawful, Unfair, and Fraudulent Business Practices (B&P Code § 17200 *et seq.*);<br><br>2.  Breach of Contract;<br><br>3. Breach of the Duty of Good Faith and Fair Dealing; and<br><br>4. Unjust Enrichment<br><br><div align=center>JURY TRIAL DEMANDED</div> |

- 1 -

SECOND AMENDED COMPLAINT

## CLASS ACTION COMPLAINT

Plaintiff Lit'l Pepper Gourmet, Inc., on behalf of itself and others similarly situated, files this Class Action Complaint against Defendant Airgas USA, LLC ("Airgas"), and alleges as follows:

## I. NATURE OF THE CASE

1.     Plaintiff brings this action to challenge Airgas's widespread and systematic practice of overcharging tens of thousands of California customers relatively small amounts of money through "fuel surcharges" are not—as mandated by uniform contractual provisions—charged to recoup "extraordinary, emergency, or other unanticipated increases in the cost of" fuel. In doing so, it has acted unfairly and deceptively by representing this hidden price increase as a pass-through charge.

2.     Airgas is one of the largest suppliers of gases in the United States, with more than $5 billion in annual revenue.  It markets, sells, and distributes gas products and supplies to thousands of small businesses and consumers in California like Plaintiff. For some of these customers, who do not enter into a separate agreement, the agreement for such sales is established by Airgas in online terms and conditions.  These terms and conditions apply uniformly to the putative class set out herein.

3.     These contractual terms establish that—in addition to the set rates Airgas charges its customers for products and services—Airgas can only impose other fees in very specific circumstances. Specifically, it provides that Airgas can assess a surcharge "only in the event of any extraordinary, emergency or other unanticipated increases in the cost of manufacturing, supplying or distributing Product hereunder."

4.     Based on the terms of this uniform provision, in 2015 Airgas implemented a "fuel surcharge" across its customer base.  It purportedly did so to recover and pass-through "extraordinary, emergency or other unanticipated" fuel costs it incurred in providing services. Its use of this term ("fuel surcharge") was not accidental; as multiple courts have recognized, the term "fuel surcharge" has a specific, understood meaning and in using this term, Airgas represents that it charges the fuel surcharge to recover the increased fuel costs it incurs in delivering products to its customers, that the fuel surcharge varies in accordance with Airgas's increased fuel costs, and that the revenue from the fuel surcharge is used to offset those increased costs.

5.     However, in truth, Airgas's fuel surcharge program was created and imposed solely to recoup additional profit at its customers' expense.  There was no "extraordinary, emergency, or other unanticipated" event that gave rise to this fee. Indeed, when Airgas created the fuel surcharge program it designed it to recover more than its budgeted, planned fuel costs and the fuel surcharge has done so ever since. The "event" that Airgas bases the imposition of its fuel surcharge upon never happened. Further, Airgas recovers any increases in fuel costs it might incur in delivering products though as separate "delivery fee" that it also imposes on customers, as well as through the base prices it charges and increases to those prices. The fuel surcharge has no relationship to increased fuel costs, much less to "unanticipated" increased fuel costs and is not charged to recover such costs. While the "fuel surcharge" appears to be related to fuel costs, Airgas actually retains the money from this purported offset and passthrough as profit.

6.     Airgas's conduct is a violation of California Business and Professions Code § 17200 *et. seq.*, a breach of contract, a violation of the duty of good faith and

SECOND AMENDED COMPLAINT

fair dealing that underpins those contracts, and, alternatively, has resulted in Airgas's unjust enrichment. Further, this case presents a prototypical situation for class treatment. Airgas's conduct—including all relevant practices, contractual terms, representations, and omissions—is uniform among all customers.   The application of uniform California law to a common course of conduct will determine liability for the classes as a whole, ensuring that the rights of thousands of small businesses are vindicated through the efficiency of a single trial.

## II.  JURISDICTION AND VENUE

7.    In its notice of removal, Defendant represented that there are 100 or more purported class members with an amount in controversy of at least $5,386.059.

8.    Minimal diversity is satisfied as Plaintiff is a citizen of California, and Defendant is a citizen of Pennsylvania and Delaware.

9.    Thus, this Court has jurisdiction over the subject matter of this action pursuant to the 28 U.S.C. § 1332(d)(2).[1]

10.    Defendant is subject to the personal jurisdiction of this District as the minimum contacts requirements are satisfied by the Defendant physically delivering carbon dioxide cylinders to Plaintiff in this District and at issue in this action are certain charges invoiced to and paid by Plaintiff for the delivery of these cylinders, among other products.

11.    Thus, Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) as Defendant is deemed to reside in this District pursuant to 28 U.S.C. § 1391(c)(2).

---

[1] Plaintiff makes no representation here that the requirements of 28 U.S.C. § 1332(d)(4) are not met as it is likely that they have not been met.

## III.  PARTIES

12.    Plaintiff Lit'l Pepper Gourmet, Inc. ("Lit'l Pepper" or "Plaintiff") is a California corporation with its principal place of business in San Diego, California.

13.    Plaintiff's experience with Airgas is typical of the class's in all relevant respects. Plaintiff applied for an account with Airgas and entered into the form contract at issue with Airgas. Plaintiff was affected and damaged by Airgas's unlawful charging of the "fuel surcharges" complained of herein.

14.    Defendant Airgas USA, LLC is a Delaware entity with its headquarters in Pennsylvania.

## IV.  CLASS ACTION ALLEGATIONS

15.    The Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(b)(3), and proposes the following class:

> All persons or entities who reside in California who (1) did not enter separate written agreement (such as a Product Sale Agreement) with Airgas, and (2) a paid Airgas a "Fuel Surcharge" at any time during the applicable statute of limitations.

16.    Excluded from the proposed class are members of the judiciary who preside over this case or related litigation, entities currently in bankruptcy, entities whose obligations have been discharged in bankruptcy, and governmental entities.

17.    Plaintiff maintains the right to create additional subclasses or classes, if necessary.

18.    Plaintiff also reserves the right to revise these definitions if discovery reveals that a nationwide class or classes are appropriate or to maintain cohesive classes which do not require individual inquiry to determine liability.

**Existence and Predominance of Common Questions of Law and Fact.**

19.    Airgas engaged in a common course of conduct which gives rise to common questions of law and fact which predominate in this litigation.   This common course of conduct— imposing fuel surcharges that violated form terms and conditions and that were deceptive and unfair—affected class members in the exact same manner.  The amount of damages may differ among class members (but is uniformly relatively small) but the fact and type of damages is uniform among all class members and flows directly from Airgas's common conduct.  A single, uniform, online contractual terms provision will govern all class members' contractual claims.  California law applies to every member's claims.

20.    This shared nucleus of facts and law gives rise to numerous questions of law and fact which overwhelm any individual issues which might exist.  Such common questions include, but are not limited to, the following:

    a.  Whether Airgas used standard online terms and conditions to contract with putative class members;

    b.  Whether California law governs claims of the class;

    c.  Whether the standard terms allow Airgas to charge a "fuel surcharge" only in the event of "extraordinary, emergency or other unanticipated" costs;

    d.  Whether Airgas violated this provision through its "fuel surcharge" program;

- 6 -

e. Whether the "fuel surcharge" Airgas imposes is designed or intended to recover Airgas's increased fuel costs;

f. Whether the "fuel surcharge" Airgas imposes is reasonably related to Airgas's increased fuel costs;

g. Whether Airgas recovers the same costs which purportedly justify the "fuel surcharge" through the prices it charges and delivery fees;

h. Whether Airgas uses revenue from the "fuel surcharge" to offset its increased fuel costs;

i. Whether Airgas was unjustly enriched through its conduct;

j. Whether use of the term "fuel surcharge" is deceptive;

k. Whether Airgas's conduct in creating implementing and collecting the fuel surcharge is fraudulent under Cal. Bus. & Prof. Code § 17200 *et seq.*;

l. Whether Airgas's conduct in creating implementing and collecting the fuel surcharge is unfair under Cal. Bus. & Prof. Code § 17200 *et seq.*

**Numerosity**

21. Upon information and belief, while the exact number of class members is unknown to the Plaintiff now, the class contains thousands of members. Airgas has over a million customers nationwide, and thousands in California alone. The number of potential class members is so numerous that joinder of all members of the classes is impracticable.

**Typicality**

22. The claims of the named Plaintiff are typical of the claims of the class. Plaintiff, like other class members, entered into the same online contractual provision governing the fuel surcharge and paid the fraudulent and unfair "fuel

- 7 -
SECOND AMENDED COMPLAINT

surcharges." Plaintiff was subject to, and was harmed by, the exact same common policies and practices which affected all class members.

## Adequacy

23.    Plaintiff will fairly and adequately protect the interests of the members of the class and has no interest antagonistic to those of other class members. Plaintiff shares the same interests and was harmed by the same conduct as each other class member. Resolution of this case will inherently vindicate and redress the interests of Plaintiff equally with class members. Plaintiff has retained class counsel competent and experienced in prosecuting class actions and such class counsel is financially able to represent the class.

## Superiority and Manageability

24.    The class action mechanism is superior to other available methods for the fair and efficient adjudication of this controversy. Individual joinder of all members of the class is impracticable. While the total amount at issue in this litigation is substantial, individual damages for a given plaintiff are small and class members have little incentive to pursue individual claims. The interests of judicial economy favor adjudicating the claims for the Plaintiff class in a single forum rather than on an individual basis, thus also ensuring consistent adjudications and a uniformity of decision. The Proposed class definition is objective and class membership is easily determined using customer information and financial records maintained by Airgas in electronic form. Calculation of damages can be accomplished using systematic means and objective criteria. The class action mechanism is administratively feasible and provides the benefit of unitary adjudication

## V. FACTUAL ALLEGATIONS

25. Airgas is one of the largest gas distribution companies in the United States, with more than a million customers, and over $5 billion in annual revenue.

26. Plaintiff is a small, locally-owned restaurant in San Diego. For its business, Plaintiff requires carbon dioxide and related equipment. Like thousands if other small businesses in California, Airgas agreed to provide gases to Plaintiff in exchange for a set price.

27. And, like thousands of other small businesses, it did so without entering into a separate written agreement, instead relying upon the contractual relationship created by online terms and conditions. Specifically, the contractual terms establish that Airgas may only impose surcharges of any sort in specific circumstances. The relevant provision states that:

> SURCHARGES. Following notice from Seller, Buyer shall pay to Seller a surcharge in the event of any extraordinary, emergency or other unanticipated increases in the cost of manufacturing, supplying or distributing Product hereunder.

28. This provision has been identical at all relevant times and for all putative class members.

29. The correct role of this provision is apparent from its plain language: it allows Airgas to pass-through the increased costs it incurs but only in the event that such increases are "extraordinary," "emergency," or otherwise "unanticipated." Increased costs that Airgas foresees cannot be recovered through such surcharges because they can be reasonably accounted for by Airgas through other means, such as the base prices and other fees it assesses.

30.     Indeed, this contractual language comports with the common, understood meaning of "surcharge" recognized by multiple courts.   That is, a "surcharge" is "an additional charge or payment" assessed to pass-through a specific unanticipated cost event.   And, specifically, the term "fuel surcharge" has a common, understood meaning for any reasonable consumer, including for Plaintiff and putative class members.   That is, the term "fuel surcharge" indicates a fee charged to recover unanticipated increased fuel costs incurred by the provider, which is related to such costs, and which is used to offset or recover such costs.

31.     Multiple courts have recognized that the usage of this specific term conveys this meaning to customers. *See, e.g., Deere Constr., LLC v. Cemex Constr. Materials, LLC,* 198 F. Supp. 3d 1332 (S.D. Fla. 2016) ("What is allegedly deceptive is that the so-called 'fuel surcharges' and 'environmental charges,' labeled as such by Defendants, were not in fact designed to cover anything related to fuel or the environment. Defendants chose the two adjectives that describe the fees being assessed. Each adjective carries meaning"); *Dover v. British Airways, PPLC (UK)*, 2013 WL 5970688, at *4 (E.D.N.Y. Nov. 8, 2013) ("The plain meaning of the term 'fuel surcharge' is a supplemental charge that is reasonably related to or based upon the cost or price of fuel. This understanding comports with conventional usage.").

32.     Pursuant to the form provision in the online contractual terms and this meaning, Airgas assess its customers a fee it calls a "fuel surcharge." It purportedly does so to recover the "extraordinary, emergency, and unanticipated" increased fuel costs it incurs in distributing products to customers.   Airgas uniformly uses the term "fuel surcharge" to charge this fee to Plaintiff and putative class members.   It does so consistently and continually, including every time it assesses the fee on monthly

invoices.[2]  It charges fuel surcharge in a standard, uniform amount based upon the same purported justification.

33.     In truth, there was no "extraordinary, emergency, and unanticipated" increased fuel cost event that gave rise to the fuel surcharge.  Rather, Airgas created it in its current form in 2015 with the express, sole purpose of creating unearned profit on the backs of its customers.  Indeed, Airgas did not have any unanticipated increased fuel costs at that time or since.  Upon information and belief, it set the base rate for the fuel surcharge at an artificially low level below the anticipated fuel price and rates it anticipated to create a "spread" that would ensure it created fuel surcharge revenue even when its fuel costs remained within anticipated amounts.  Further, upon information and belief, Airgas employs a sophisticated budgeting process that anticipates and sets a budgeted fuel cost for the year.  The fuel surcharge was not created, nor is it changed in any way, as a result of how fuel costs compare to such anticipated costs.  That is, Airgas has never had "extraordinary, emergency, and unanticipated" fuel costs and the charging of the fuel surcharge is a breach of the terms of the uniform contractual surcharge provision.

34.     Further, the "fuel surcharge" Airgas imposes is wholly unrelated to Airgas's actual or increased fuel costs and—in neither purpose nor effect—does it pass through such costs. The method by which Airgas determines the fuel surcharge has no relation to its increased fuel costs or to any changes in those costs.  It is arbitrary in that the only driving factor is the profit Airgas seeks to derive from the fuel surcharge while maintaining the false appearance of the fee as a legitimate charge related to fuel costs.  Airgas has done no legitimate analysis to determine the proper amount of the fuel surcharge in connection to its actual increased or

---

[2] Plaintiff received such invoices and misrepresentations including on invoices sent by Airgas.

SECOND AMENDED COMPLAINT

decreased fuel costs.  Airgas has no internal process or justification for the fuel surcharge and the methodology—or lack thereof—by which Airgas charges it demonstrates that this fee is actually a hidden price increase that Airgas falsely represents to be a fuel surcharge imposed due to a fuel cost "event" that was unforeseeable and out of its control. Airgas does not apply the money received from the fuel surcharge to offset its increased fuel costs; rather, it is recognized as revenue and contributes directly to Airgas's profit. In fact, in its annual report filings, Airgas has stated that its "gross profits" increased year over year, in part as a result of "margin expansion on price increases and surcharges…."[3] The only way in which Airgas's profit margin increases based upon surcharges is when those surcharges are profit to begin with.

35.    Additionally, Airgas already fully recovers the increased fuel costs that purportedly justify the fuel surcharge through a separate "delivery fee" it charges when it delivers products.  Airgas does not incur any increased fuel costs outside those already recovered through these separate delivery fees, and Airgas increases the "delivery fee"—which is substantial, and often increased, reaching more than $20 per delivery—routinely.  Through the delivery fee alone, Airgas recovers more than its entire increased fuel costs (anticipated or otherwise).  Airgas further recovers its purported increased fuel costs through the prices it charges customers. These prices include the individual component costs of Airgas's business, including—specifically—the costs of fuel and other overhead.  When setting prices and imposing price increases, Airgas takes into account its fuel costs to recover such costs, and the fuel surcharge is a deceptively named hidden price increase.[4]

---

[3]https://www.airgas.com/2015annualreport/download/airgas2015_management_dsc.pdf.
[4] *See, e.g.,* https://www.airgas.com/medias/Jan-2017-News-Release-Airgas-Announces-Pricing-Actions.pdf?context=bWFzdGVyfHJvb3R8R8NDkyOTV8YXBwbGljYXRpb24vcGRmfGhhYS9o

SECOND AMENDED COMPLAINT

36.   Airgas's conduct in assessing the "fuel surcharge" not only violates the clear, uniform contractual requirement that it only do so in the event of "extraordinary, emergency, or unanticipated" increased fuel costs, it is deceptive and unfair.  By using the term "fuel surcharge"—as opposed to a fee term that is general or accurate, like "service charge" or "additional profit fee"—Airgas deliberately mislead Plaintiff and putative customers as to the nature, purpose, and use of this fee. Airgas has intentionally deceived Plaintiff and each putative class member into believing that the fuel surcharge is directly related to Airgas's actual fuel costs, is calculated using such costs, and will be used to offset such costs.

37.   Airgas also has omitted material facts regarding the fuel surcharge. For example, Airgas does not disclose that the fee is not related to Airgas's increased or actual fuel costs, that that Airgas's increased fuel costs are not a factor in the amount of the fuel surcharge, that the amount of the fuel surcharge is not tied to Airgas's increased fuel costs, and that the fuel surcharge is recognized as profit. Airgas does not disclose its actual fuel costs to customers, nor does it disclose the methodology, to the extent there is one, used to determine the amount of the fuel surcharge.  In truth, Airgas devised, implemented, and set the amount of the fuel surcharge simply to increase its profits without any intent of recovering the increased energy costs they incur in servicing customers. Airgas knows when it enters into an agreement with a customer that the customer will pay substantially more than the agreed upon service rate through a fuel surcharge which is entirely unfair, deceptive and/or misleading.   Airgas does not disclose this fact to its customers.

---

MTMvMTE0OTAwNTQ1NzAwMTQucGRmfDhiZTY5ZGU0MWE5ZTJjNjhkOTNlYzIzMzY1YzEzMTA3NzQ1MTIyMTY3ZWE0YTllYmI0OWQ5NmM3MTFFiYzFiMjM.

38.     Further, to reiterate, Plaintiff does not allege that it did not know about the "fuel surcharge" or that this fee was not listed as a "fuel surcharge" on the invoices Airgas sent every month. Rather, Plaintiff alleges that the "fuel surcharge" is fraudulent and unfair because it is not—in design, intent, or effect—related to anything having to do with fuel.  Neither Plaintiff nor any putative class member could have known that the "fuel surcharge" is actually an illegitimate mechanism designed to increase Airgas's profits rather than offset costs Airgas actually incurred, particularly given the online contractual terms that mandated that Airgas could only impose such a surcharge in the event of an "extraordinary, emergency, and unanticipated" increase in fuel costs.

39.     No putative class member, including Plaintiff had "full knowledge" of the facts pertaining to the "fuel surcharge" or price increases such that their payment of these charges may be determined to be "voluntary" under applicable law.[5]  For example, Defendant did not disclose—and in fact, actively concealed and misrepresented—the true nature and purpose of the "fuel surcharges." The only method by which any customer could have determined that the "fuel surcharges" did not relate to any actual costs, but rather were unlawful charges that Defendant misrepresented to customers—while at the same time recovering for such purported costs through other means—would involve information (such as financial data in Defendant's general ledger and internal communications) that were never available to customers.

40.     Further, Plaintiff and each putative class member was under a contractual, legal obligation to pay the invoiced charges to Defendant.  Upon information and belief, Defendant enforces its form contracts—including punitive

---

[5] This is a factual question.  *See, e.g., Rodman v. Safeway Inc.*, 125 F. Supp. 3d 922, 941 (N.D. Cal. 2015), aff'd, 694 F. App'x 612 (9th Cir. 2017).

measures and terms—to ensure that customers cannot escape them, even if such customers could have known that the fuel surcharges and price increases were unlawful and deceptive.   Thus, additionally, any payments could not be "voluntary."

41.   **The Class Waiver In The Online Terms Is Unenforceable.**

42.   Airgas's online terms and conditions purport to contain a class waiver that is unconscionable and not enforceable.   These terms are the definition of a contract of adhesion.   There is no option given to any putative class member to negotiate or alter any terms.   They are unilaterally posted and enforced by Airgas at its sole discretion.   In fact, the terms are entered into simultaneously with transactions and are not provided in paper or in any medium which could be altered through negotiation. This dispute involves predictably small amounts of damages. The fuel surcharges at issue amount to tens of dollars, at most, for any given month and the damages for a given customer will rarely if ever exceed a thousand dollars. Further, Airgas has superior bargaining power to Plaintiff and to any other putative class member, as evidenced by its size, market share, and the uniformity of the online terms.

43.   As set out above, Airgas carried out a scheme to deliberately cheat a large number of customers out of small amounts of money.   It created a "fuel surcharge" program that was not the product of a fuel cost increase "event"—as contemplated by the uniform terms—but by an intentional, deliberate plan to cull unearned profit from its customers regardless of fuel cost increases.   The specific terms of the online agreement contemplate that Airgas can only charge a "fuel surcharge" in specific circumstances.   Despite these limitations, Airgas deliberately implemented a fuel surcharge that it charges without any qualifying event.   It has

- 15 -

no unanticipated increased fuel costs, much less any "extraordinary" or "emergency" fuel costs.  It budgets for, anticipates, and meets its fuel costs estimates on an annual basis. And, further, Airgas already recovers all fuel costs (anticipated or otherwise) through the separate delivery fee. The "Fuel surcharge" program implemented by Airgas in 2015 is a fraudulent scheme to cheat its customers.

44.    The costs of vindicating an individual customer's claims, when compared to their potential recovery, is too great to allow any individual claim absent class treatment.  There is a public interest in support class actions in such circumstances for such claims.  Notably, the online terms do not allow for the recovery of attorney's fees or costs for a successful customer vindicating its rights.  Any purported class waiver is not enforceable.

# VI.  CAUSES OF ACTION

## First Cause of Action

## Violation of Unfair Competition Law

## (Cal. Bus. & Prof. Code § 17200 *et seq.*)

45.    All allegations and paragraphs in this Complaint are incorporated by reference.

46.    California's Unfair Competition Law (Cal. Bus. & Prof. Code § 17200-17210) prohibits engaging in "any unlawful, unfair, or fraudulent business act or practice." Cal Bus. & Prof. Code § 17200.

47.    Airgas is a "person" as defined in Cal. Bus. & Prof. Code § 17201.

48.    Airgas has violated Cal. Bus. & Prof Code § 17200 *et seq*. by engaging in unfair and fraudulent business acts and practices.

49.    Plaintiff and the class members have been harmed by Airgas's fraudulent acts. Such acts include but are not limited to:

    a.    Representing, through the commonly understood and judicially recognized term "fuel surcharge," that the "fuel surcharge" was implemented, calculated, charged, and collected to offset Airgas's actual or increased fuel costs. Representing that the fuel surcharge was implemented as a result of an unanticipated, emergency, or extraordinary increase in fuel costs.  This representation was made uniformly on the uniform terms at issue and invoices. Plaintiff and class members relied upon this understood meaning, as used by Airgas, in entering the contract and paying the fee. This representation was material as Plaintiff and class members would not have paid the "fuel surcharge" had they known it was simply a profit-enhancement tool. This representation is false as the "fuel surcharge" is not related to or used to offset Airgas's actual or increased costs of fuel. Airgas made these representations in order to, and with the effect of, inducing Plaintiff and class members to pay the fee.

    b.    Failing to disclose that, contrary to the common and judicially recognized meaning of the term "fuel surcharge," the "fuel surcharge" is not related to Airgas's increased or actual fuel costs, that that Airgas's increased fuel costs are not a factor in the amount of the fuel surcharge, that the amount of the fuel surcharge is not tied to any legitimate government index, and that the fuel surcharge is recognized as profit. Airgas never

disclosed these facts. These omissions were material as Plaintiff and class members would not have paid the "fuel surcharge" had they known it was simply a profit-enhancement tool; rather than a legitimate fee that its common meaning suggests. Plaintiff and the class members relied upon this omission of material fact in entering the contract and paying the "fuel surcharge." Airgas omitted these material facts in order to, and with the effect of, inducing Plaintiff and the class members to pay the improper fuel surcharge.

50.     Plaintiff and class members have also been harmed by Airgas's unfair conduct. Such conduct includes but is not limited to:

a.      Representing, through the commonly understood and judicially recognized term "fuel surcharge," that the "fuel surcharge" was implemented, calculated, charged, and collected to offset Airgas's actual or increased fuel costs. Representing that the fuel surcharge was implemented as a result of an unanticipated, emergency, or extraordinary increase in fuel costs.   This representation was made uniformly on the uniform terms at issue and invoices. Plaintiff and class members relied upon this understood meaning, as used by Airgas, in entering the contract and paying the fee. This representation was material as Plaintiff and class members would not have paid the "fuel surcharge" had they known it was simply a profit-enhancement tool. This representation is false as the "fuel surcharge" is not related to or used to offset Airgas's actual or increased costs of fuel. Airgas

- 18 -

made these representations in order to, and with the effect of, inducing Plaintiff and class members to pay the fee.

b.   Failing to disclose that, contrary to the common and judicially recognized meaning of the term "fuel surcharge," the "fuel surcharge" is not related to Airgas's increased or actual fuel costs, that that Airgas's increased fuel costs are not a factor in the amount of the fuel surcharge, that the amount of the fuel surcharge is not tied to any legitimate government index, and that the fuel surcharge is recognized as profit. Airgas never disclosed these facts. These omissions were material as Plaintiff and class members would not have paid the "fuel surcharge" had they known it was simply a profit-enhancement tool; rather than a legitimate fee that its common meaning suggests. Plaintiff and the class members relied upon this omission of material fact in entering the contract and paying the "fuel surcharge." Airgas omitted these material facts in order to, and with the effect of, inducing Plaintiff and the class members to pay the improper fuel surcharge.

51.   The gravity of the harm caused by Airgas's conduct—overcharging Plaintiff and class members for products by seizing on the common understanding of the term "fuel surcharge" while charging an improper fee—far outweighs the utility, if any, of Airgas's conduct in garnering unearned profit from Plaintiff and class members through such a scheme.

52.   The injury to Plaintiff and the class members is substantial. Due to Airgas's fraudulent and unfair representations, Plaintiff and the class members we

SECOND AMENDED COMPLAINT

disposed of money that was charged in the form of the improper fuel surcharge charged at every delivery. This is not outweighed by the utility, if any, of Airgas's conduct in garnering unearned profit through its "fuel surcharge" program. Plaintiff and class members could not themselves have reasonably avoided this harm due to Airgas's misrepresentations and because Airgas did not disclose the information Plaintiff and class members would need to discover the harm to them—namely, financial information in Airgas's sole possession.

53.     Airgas's misrepresentations and failures to disclose material facts about the "fuel surcharge" were likely to deceive an ordinary consumer given the common understanding of the term "fuel surcharge" and Airgas's misrepresentations and omissions.

54.     Airgas's misrepresentations and failures to disclose material facts about the "fuel surcharge" deceived Plaintiff and the class members into entering the form contract at issue and paying the "fuel surcharge."

55.     Plaintiff and class members would not have entered into contracts with Airgas and would not have paid the fees at issue had they known the truth about the "fuel surcharge" and had not been subject to Airgas's misrepresentations and omissions.

56.     As a result of the fraudulent and unfair practices described above, Plaintiff and each member of the putative class has been harmed in that they paid the improper "fuel surcharges" to their detriment, and seek to recover the entirety of the amounts paid.[6] Additionally, Plaintiff seeks an injunction as unless a class-

---

[6] As alleged above, Plaintiff's claims are not that "it did not know" that Defendant was imposing a fee it called a "fuel surcharge," but that the fees Defendant labeled as such did not—in intent or practice—cover anything related to fuel. In fact, Defendant already recovers such purported costs through other means. The "fuel surcharge" Defendant imposed was an illegitimate mechanism that Defendant used simply to pad its profits at the expense of its customers, while misleading

wide injunction is issued, Plaintiff and class members may continue to be deceived and harmed by Airgas's practices.

### **Second Cause of Action**

**Breach of Contract**

**(On Behalf of the Class)**

57.     All allegations and paragraphs in this Complaint are incorporated by reference.

58.     Plaintiff and each member of the class entered into form, written agreements with Airgas. Pursuant to these agreements, Airgas charged the "fuel surcharges" complained of herein.

59.     Plaintiff and each member of the class performed on their agreements.

60.     The form terms and conditions that govern the agreement between each putative class member and Airgas establish that Airgas may only charge a fuel surcharge in the event "extraordinary", "emergency", or "other unanticipated" increase in fuel costs.

61.     As set out herein, Airgas breached this provision by imposing its fuel surcharge program which was not the result of an "extraordinary", "emergency", or "other unanticipated" increase in fuel costs.  Airgas's fuel surcharge is an unlawful profit center that was implemented in the face of known and anticipated fuel costs and which—in purpose and effect—is a profit center as opposed to a cost recovery mechanism.

62.     Plaintiff and each member of the class have been directly and proximately harmed by Airgas's breach of contract in that each paid more than

customers into believing that such fees were related to fuel costs it incurred. Thus, Plaintiff and putative class members were damaged in that—as a direct consequence of Defendant charging the fraudulent and unfair "fuel surcharges"—they paid the fees.

SECOND AMENDED COMPLAINT

agreed through the imposition of the improper "fuel surcharges."

## Third Cause of Action

### Breach of the Implied Covenant of Good Faith and Fair Dealing
### (On Behalf of the Class)

63.     All allegations and paragraphs in this Complaint are incorporated by reference.

64.     Plaintiff and each member of the class entered into form, written agreements with Airgas. Pursuant to these agreements, Airgas charged the "fuel surcharges" complained of herein.

65.     Plaintiff and class members fulfilled their obligations under the contract.

66.     All conditions precedent to Airgas's performance under the contract occurred.

67.     The form terms and conditions that govern the agreement between each putative class member and Airgas establish that Airgas may only charge a fuel surcharge in the event "extraordinary", "emergency", or "other unanticipated" increase in fuel costs.

68.     As set out herein, Airgas breached this provision by imposing its fuel surcharge program which was not the result of an "extraordinary", "emergency", or "other unanticipated" increase in fuel costs.  Airgas's fuel surcharge is an unlawful profit center that was implemented in the face of known and anticipated fuel costs and which—in purpose and effect—is a profit center as opposed to a cost recovery mechanism

69.     Airgas breached the contracts at issue unfairly and interfered with the right of Plaintiff and the class members to receive the benefits of the contract by

- 22 -

charging a "fuel surcharge" that was completely unrelated to its actual or increased cost of fuel. Airgas failed to fulfill any discretionary duties it might have under the contract in setting the amount of the "fuel surcharge" reasonably and in good faith, thereby unfairly interfering with the right of Plaintiff and the class members to receive the benefits of the contract.

70.    Plaintiff and each member of the class have been directly and proximately harmed by Airgas's breach of the covenant of good faith and fair dealing in that each paid an unlawful and arbitrary fuel surcharge.

## Fourth Cause of Action

### Unjust Enrichment

### (On Behalf of the Class)

71.    All allegations and paragraphs in this Complaint are incorporated by reference.

72.    To the extent necessary, Plaintiff explicitly pleads this cause of action in the alternative.

73.    By charging and collecting fuel surcharges which it knew to be not justified by any fuel cost it incurred, by suppressing and misrepresenting material facts (including that it would charge a fuel surcharge that was unrelated to its actual or increased fuel costs), and by engaging in other wrongful and unlawful conduct as set out herein, Airgas obtained a benefit, in the form of money, which properly belongs to the putative class.  The benefit conferred by the putative class was non-gratuitous and Airgas realized value from this benefit.

74.    Due to Airgas's conduct, it would unjust for Airgas to retain the benefit bestowed by Plaintiff and the class members at the expense of Plaintiff and the class members.

## **PRAYER FOR RELIEF**

75.     Plaintiff, on behalf of itself and each member of the putative class, demands restitution, injunctive relief, all damages available, including the amount of all "fuel surcharges" paid to Airgas, and interest.

## **DEMAND FOR JURY TRIAL**

The Plaintiff hereby demands a trial by a struck jury of all issues triable by right.


Dated: December 20, 2019              LANDAY ROBERTS LLP

By: _____    */s/ John K. Landay*
         John K. Landay, Esq. (257573)

Attorney for Plaintiffs


Dated: December 20, 2019              SPRINKLE LLOYD & LICARI, LLP

By: _____    */s/ Michael A. Licari*
         Michael A. Licari, Esq. (265241)

Attorney for Plaintiffs

## DEMAND FOR JURY TRIAL

Plaintiff LIT'L PEPPER GOURMET, INC., individually and on behalf of those similarly situated ("Plaintiff") hereby demands a jury trial.

Dated: December 20, 2019          LANDAY ROBERTS LLP

By: _____ */s/ John K. Landay*
       John K. Landay, Esq. (257573)

Attorney for Plaintiffs

Dated: December 20, 2019          SPRINKLE LLOYD & LICARI, LLP

By: _____ */s/ Michael A. Licari*
       Michael A. Licari, Esq. (265241)

Attorney for Plaintiffs

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that true and correct copies of the above and following documents have been served on December 20, 2019 to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Civ. LR 5.4(d).  Any other counsel of record will be served by U.S. Mail or hand delivery.

### SECOND AMENDED COMPLAINT

_____ */s/ John K. Landay, Esq.*
       John K. Landay